EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico<br>　　　Demandantes-Apelantes<br><br>　　　　　　　v.<br><br>Secretario del Departamento de Educación,<br>et al.<br>　　　Demandados-Apelados<br><br>Educadores Puertorriqueños en<br>Acción, et al.<br>　　　　　Interventores | Certiorari<br><br>2002 TSPR 58<br><br>156 DPR _____ |

Número del Caso: AC-2001-5

Fecha: 9 de mayo de 2002

Tribunal de Circuito de Apelaciones:
　　　　　　　　　　　　Circuito Regional I


Juez Ponente:
　　　　　　　　　Hon. Jorge Segarra Olivero


Abogados de la Parte Apelante:
　　　　　　　　　Lcdo. Rafael A. Nadal Arcelay
　　　　　　　　　Lcda. Arlene Rochelle Pérez Borrero


Oficina del Procurador General:
　　　　　　　　　Lcdo. Héctor Clemente Delgado
　　　　　　　　　Procurador General Auxiliar


Abogadas de la Parte Interventora:
　　　　　　　　　Lcda. Celina Romany
　　　　　　　　　Lcda. Vanessa Saxton Arroyo


Materia: Injunction Provisional, Injunction Preliminar y Permanente

　　　Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros de
Puerto Rico
      Demandantes-Apelantes

          vs.

Secretario del Departamento de
Educación, *et al.*                AC-2001-5        Certiorari
      Demandados-Apelados

Educadores Puertorriqueños
en Acción, *et al.*
      Interventores

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 9 de mayo de 2002.

Al amparo de nuestro derecho constitucional sobre libertad de expresión, ¿puede el Departamento de Educación prohibir que una organización, distinta a la organización sindical incumbente, se exprese en los predios de las escuelas públicas, durante horas no laborables, sobre los términos y condiciones de empleo de sus empleados unionados? Por entender que dicha prohibición no es estrictamente necesaria para adelantar un interés gubernamental apremiante, resolvemos que la misma está vedada por nuestra constitución.

I.

La Asociación de Maestros de Puerto Rico (en adelante "la Asociación de Maestros") es una corporación sin fines de lucro dedicada a promover y defender el derecho de toda persona a una educación pública gratuita y a fomentar el desarrollo intelectual y profesional-sindical de los trabajadores de la educación.[1] Sus objetivos incluyen reclutar como socios a los trabajadores del sistema de instrucción pública y privada; asumir su representación en todos los foros pertinentes y en cualquier proceso de negociación colectiva que autoricen las leyes; defender los recursos asignados a las escuelas públicas; y ofrecer servicios para el bienestar personal y familiar de sus socios, entre otros. Id.

Con el fin de cumplir con los objetivos mencionados anteriormente, la Asociación de Maestros acostumbra visitar los planteles escolares públicos, durante horas no laborables, para comunicarse con las personas que allí laboran. Sin embargo, el Departamento de Educación Pública (en adelante "el Departamento") comenzó a restringir el acceso de la Asociación de Maestros a los planteles escolares. Por ello, la Asociación de Maestros le solicitó al Departamento que expresara oficialmente su política pública respecto al acceso de ésta a los planteles escolares públicos. A tenor con dicho requerimiento, el Departamento dispuso que la Asociación de Maestros podría visitar las escuelas, durante horas no

laborables, para orientar a los empleados no unionados sobre términos y condiciones de empleos y cualquier otro asunto de su interés. No obstante, con respecto o los empleados unionados al amparo de la Ley de Sindicación de Empleados Públicos,[2] el Departamento estableció que la Asociación de Maestros no podría discutir asuntos relacionados con los términos y condiciones de empleo, aún en horas no laborables, porque entendió que dicha tarea fue delegada a la organización sindical incumbente.

Ante la restricción anterior, la Asociación de Maestros presentó una "Petición de Entredicho Provisional e *Injunction* Preliminar y Permanente" contra el Sr. Víctor Fajardo, en su carácter oficial como Secretario del Departamento, el Lcdo. Ángel L. Meléndez Osorio, en su carácter oficial como Director de la Oficina de Asuntos Laborales del Departamento, el Departamento y el Estado Libre Asociado de Puerto Rico. Así, solicitó una orden de cese y desista dirigida contra el Departamento para que éste se abstuviera de prohibir el acceso de la Asociación de Maestros a los planteles escolares públicos para discutir con los empleados unionados los términos y condiciones de empleo y demás asuntos incluidos en el convenio colectivo. Alegó que tales actos violan la libertad de

---

[1] Artículos de Incorporación y Reglamento de la Asociación de Maestros de Puerto Rico.
[2] Ley Núm. 45 del 25 de febrero de 1998, conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1451 *et. Seq*, (en adelante "Ley de Sindicación de Empleados Públicos").

asociación y expresión consagrados en el Art. II, Sección 4, de la Constitución del Estado Libre Asociado de Puerto Rico.

El Tribunal de Instancia declaró sin lugar la solicitud de entredicho provisional y de *injunction* preliminar, y señaló vista para discutir la solicitud de *injunction* permanente. Antes de celebrarse la referida vista, el tribunal de instancia, a petición del Departamento, permitió la intervención de la Federación de Maestros, la Asociación de Empleados de Comedores Escolares, el Sindicato Puertorriqueño de Trabajadores y la Unión del Personal Administrativo, Secretarial y de Oficina. Cada una de estas organizaciones ostenta la representación exclusiva de grupos distintos de empleados del Departamento conforme a la Ley de Sindicación de Empleados Públicos, *supra*. Además, Educadores Puertorriqueños en Acción (en adelante "Educadores Puertorriqueños") compareció y a su vez, se le admitió como demandante en el presente caso.[3]

Así las cosas, tanto el Departamento como los interventores presentaron moción de desestimación. En dichas mociones alegaron, en síntesis, que la Asociación de Maestros carecía de acción legitimada para requerirle al Departamento que le conceda acceso a los planteles escolares para discutir con los empleados unionados asuntos que fueron delegados a los representantes exclusivos, en virtud de la Ley de Sindicación

---

[3] Educadores Puertorriqueños es una organización magisterial *bona fide* conforme a la Ley 134 de 19 de julio de 1960. Dicha ley le reconoció el derecho a los empleados de las agencias públicas a organizarse en asociaciones *bona fide* con el fin de promover su progreso social y económico. 3 L.P.R.A. sec. 702.

de Empleados Públicos, *supra*;[4] y que además, la acción presentada era académica dado que el Departamento no les había impedido tener acceso a las escuelas, sino que les restringió los asuntos que podrían discutir con cierto grupo de empleados (los unionados) en dicho lugar. La Asociación de Maestros y Educadores Puertorriqueños se opusieron a la moción de desestimación. El tribunal *a quo* pospuso la determinación de la moción para después de celebrada una vista evidenciaria.

Concluida la referida vista y después de considerar las estipulaciones de hecho que sometieran las partes, en conjunto con la prueba documental, el tribunal de instancia determinó, entre otras cosas, que: (i) la Asociación de Maestros y Educadores Puertorriqueños no son sindicatos, ni cualifican como tal bajo la Ley de Sindicación de Empleados Públicos, *supra*; (ii) ambas organizaciones se dedican a ofrecer servicios a sus miembros y a cualquier otro personal del sector público o privado con funciones de personal docente o clasificado que desee ingresar y participar de dichos servicios; (iii) con el fin de cumplir sus objetivos, tanto la Asociación de Maestros como Educadores Puertorriqueños han tenido acceso a los planteles escolares públicos, en horas no laborables, para comunicarse con todo el personal adscrito al Departamento que desee ingresar a cualquiera de ellas, enterarse de los servicios

---

[4] El representante exclusivo es aquella organización sindical que ha sido certificada para negociar con el patrono en representación de todos los empleados comprendidos en una unidad apropiada. Art. 3(bb) de la Ley de Sindicación de Empleados Públicos, 3 L.P.R.A. sec. 1451a.

que prestan o recibir orientación sobre cualquier aspecto relacionado al personal de Departamento sobre el cual la Asociación de Maestros y Educadores Puertorriqueños brindan información. También quedó estipulado que a otras entidades, que no son organizaciones sindicales incumbentes, se les concede acceso a las escuelas públicas para promover y ofrecer sus servicios a todo el personal del Departamento.

Se aclaró, además, que tanto la Asociación de Maestros como Educadores Puertorriqueños solicitan la entrada a dichos planteles escolares públicos, en horas no laborables, y acceso a los tablones de edictos para orientar sobre asuntos de interés <u>para todo el personal adscrito al Departamento, estén o no afiliados a sus organizaciones</u>. Los asuntos sobre los cuales ambas entidades interesan ofrecer orientación incluyen, sin limitarse a ellos, (1) legislación aplicable a dicho personal; (2) carrera magisterial; (3) ley de retiro; (4) Ley de Sindicación de Empleados Públicos, *supra*, lo acordado en la negociación colectiva y los derechos que se convengan mediante dicha negociación; (5) promover y prestar sus servicios; y (6) reclutar miembros. <u>La Asociación de Maestros y Educadores Puertorriqueños no han reclamado participación en la negociación colectiva que llevan a cabo las organizaciones sindicales incumbentes con el Departamento.</u>

Por último, se determinó que el Departamento no niega acceso a la Asociación de Maestros ni a Educadores Puertorriqueños para comunicarse con los empleados excluidos

de la Ley de Sindicación de Empleados Públicos, *supra*. Sin embargo, respecto a los empleados unionados al amparo de dicha ley, se estableció que, aunque el Departamento le permite acceso para reunirlos y orientarlos sobre varios temas, se le prohíbe a la Asociación de Maestros abordar asuntos relacionados a salarios, beneficios marginales y términos y condiciones de empleo.

Conforme a lo anterior, el Tribunal de Primera Instancia resolvió que la Asociación de Maestros tenía acción legitimada para demandar en este caso y que la causa de acción presentada no era académica. No obstante, desestimó en todas sus partes la demanda presentada por la Asociación de Maestros y Educadores Puertorriqueños. Concluyó que las escuelas públicas son un foro público por designación y que la limitación impuesta por el Departamento es una razonable, pues la Asociación de Maestros y Educadores Puertorriqueños tienen disponible otros lugares para llevar a cabo sus actividades. Consideró, además, que la decisión del Departamento encuentra apoyo en la importancia del principio de representación exclusiva que implementa la Ley de Sindicación de Empleados Públicos, *supra*, y en el interés del Estado en mantener los planteles escolares libres de disputas laborales. Por lo tanto, resolvió que dicha restricción no interfiere con el derecho constitucional de libertad de expresión y asociación.

Oportunamente, la Asociación de Maestros acudió al Tribunal de Circuito de Apelaciones, el cual confirmó el

dictamen del tribunal de instancia. Inconforme con tal determinación, la Asociación de Maestros acudió ante nos mediante recurso de Apelación. La controversia planteada se limita esencialmente a determinar si se viola la libertad de expresión al impedir que la Asociación de Maestros y Educadores Puertorriqueños se comuniquen con los empleados unionados sobre temas relacionados a salarios, beneficios marginales y términos y condiciones de empleo.

Luego de acoger el recurso radicado, como uno de certiorari, expedimos el mismo. Examinadas las comparecencias de las partes, procedemos a resolver.

II.

Como asunto preliminar debemos atender los planteamientos sobre la ausencia de legitimación de la Asociación de Maestros para interponer la presente causa de acción y determinar si este caso es uno académico.  Veamos.

Reiteradamente hemos resuelto que las asociaciones tienen acción legitimada para demandar a nombre propio o a nombre de sus miembros o integrantes. <u>Col. de Peritos Electricistas de P.R. v. Autoridad de Energía Eléctrica</u>, res. el 22 de febrero de 2000, 2000 T.S.P.R. 28; <u>Asociación de Maestros v. Srio. Educación</u>, 137 D.P.R. 528 (1994). Para poder demandar a nombre de sus miembros, la asociación deberá demostrar que: (1) sus miembros tienen legitimación activa para demandar a nombre propio; (2) los intereses que se pretenden proteger están relacionados con los objetivos de la organización, y (3) la

reclamación y el remedio solicitado no requieren la participación individual de los miembros en el pleito. Id.

Ahora, cuando una organización demanda a nombre propio deberá cumplir con los requisitos que se le exigen a todo demandante individual. Esto es, tiene que demostrar que ha sufrido un daño claro y palpable; que el referido daño es uno real, inmediato y preciso y no uno abstracto o hipotético; la conexión entre el daño sufrido y la causa de acción ejercitada; y finalmente, que la causa de acción surge al amparo de la Constitución o de una ley. Véase: Col. de Peritos Electricistas de P.R. v. Autoridad de Energía Eléctrica, *supra*; Hernández Torres v. Hernández Colón, 129 D.P.R. 824 (1992); Asociación de Maestros v. Srio. Educación, *supra*; Col. Ópticos de P.R. v. Vani Visual Center, 124 D.P.R. 559 (1989).

Asimismo, hemos interpretado los requisitos sobre legitimación activa de forma flexible y liberal, particularmente al atender reclamos dirigidos contra las agencias y funcionarios gubernamentales. García Oyola v. Junta de Calidad Ambiental, 140 D.P.R. 649 (1996).

Conforme a lo anterior, resulta claro que la Asociación de Maestros tiene legitimación activa para demandar en defensa de su derecho de libertad de expresión.[5]  Entre los objetivos

---

[5] Nuestro ordenamiento le reconoce a las personas jurídicas el derecho de libertad de expresión, así como otros derechos constitucionales. Col. De Abogados de P.R. v. Schneider I, 112 D.P.R. 114, 540, 551-552 (1982), *citando a* First National Bank of Boston v. Bellotti, 435 U.S. 765 (1978); y Rodríguez v. Secretario, 109 D.P.R. 251 (1979) (sobre libertad de expresión). Véase, además, E.L.A. v. Coca Cola, 115 D.P.R. 197

principales de la Asociación de Maestros se encuentran fomentar el desarrollo intelectual y profesional-sindical de los trabajadores de la educación y defender sus derechos e intereses frente a aquellos que lo infrinjan. Si los medios por los cuales la Asociación de Maestros se comunica con los trabajadores de la educación se coartan, sus intereses se afectan directamente.

Las consecuencias de que la Asociación de Maestros no pueda comunicarse con los empleados del Departamento, en los predios escolares, durante horas no laborables, son reales e inmediatas. Las reuniones de los empleados unionados en los planteles escolares es el medio de comunicación más efectivo y directo para el cumplimiento de los objetivos de la Asociación de Maestros. La conexión entre el daño que sufre la Asociación de Maestros y el remedio que solicita es manifiesta. Mientras más se limiten los canales de comunicación entre la Asociación de Maestros y los trabajadores de la educación, su capacidad para reclutar miembros y realizar sus objetivos se reducirá. Finalmente, tanto la Constitución de Estados Unidos como la Constitución del Estado Libre Asociado de Puerto Rico reconocen el derecho a la libre expresión y asociación. Sección 4 del

---

(1984) (sobre registros y allanamientos irrazonables); Intl. National Elec. v. Secretario de Hacienda, 107 D.P.R. 467 (1978) (Debido Proceso de Ley e Igual Protección de las Leyes); Warner Lambert Co. v. Trib. Superior, 101 D.P.R. 378 (1973) (menoscabo de obligaciones contractuales); Solís v. Municipio, 120 D.P.R. 53 (1987) (sobre la capacidad de una organización sindical *bona fide* para demandar en defensa de sus intereses y los de sus miembros).

Art. II de la Constitución del Estado Libre Asociado de Puerto Rico.

De otra parte, el planteamiento sobre academicidad es totalmente inmeritorio. El Departamento sostiene que como no le prohibió a la Asociación de Maestros tener acceso a los predios de las escuelas, sino que le restringió los asuntos que podrían discutir con cierto grupo de empleados (los unionados) en dicho lugar, en este caso no existe controversia real entre las partes. No obstante, precisamente lo que solicita la Asociación de Maestros es poder orientar a los empleados unionados sobre los términos y condiciones de empleo dentro de los planteles escolares públicos, durante horas no laborables. Como se puede apreciar, la presente controversia lejos de ser académica, ha sido real y manifiesta desde su origen.

Después de aclarar las cuestiones anteriores, procede que abordemos la controversia del caso de autos a la luz de nuestro derecho de libertad de expresión y asociación consagrados en la Sección 4 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico.

### III.

La Sección 4 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico proclama nuestro derecho de libertad de expresión y asociación. Expresamente se reconoce que:

> "No se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios."

Entre las libertades individuales, la libertad de expresión es probablemente la más esencial, una vez garantizado el derecho a la vida y a la libertad física. Tiene como fondo la libertad de conciencia, sobre la cual se basan tanto la libertad de religión como la libertad de expresión del pensamiento, y supone el intento de proteger jurídicamente el libre desenvolvimiento de la personalidad a través de los medios más eficaces y habituales de exteriorización de los contenidos de conciencia. La Nueva Constitución de Puerto Rico, Río Piedras, Ed. U.P.R., 1954, Parte II, pág. 250. Es una garantía dirigida a proteger el derecho del individuo particular a exteriorizar como guste los contenidos de su conciencia, al mismo tiempo que establece la premisa indispensable para la formación de opinión pública, sobre cuyo régimen está fundado el gobierno democrático. Id.

"Pensar y expresar el pensamiento libremente, por la palabra hablada o escrita, no solamente es lo propio de la naturaleza humana, sino el medio único del progreso humano. Reunirse los hombres para los fines de la vida pública y privada, formular su pensamiento y lanzarlo a los cuatro vientos en pos de la persuasión de sus semejantes, es la consecuencia inmediata de la libertad ingénita de pensar". Diario de Sesiones de la Convención Constituyente de Puerto Rico, Equity Publishing Corp., 1961, tomo 1, pág. 389.

La libertad de expresión es la quinta esencia de una sociedad democrática. De forma multidimensional, en la

constelación de valores democráticos, goza de una primacía peculiar. _Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos_, res. el 11 de mayo de 2000, 2000 T.S.P.R. 71; _citando a_ _Coss y U.P.R. v. C.E.E._, 137 D.P.R. 877, 886 (1995). Por lo que estamos obligados a su más celosa protección. _Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos_, _supra_; _Rodríguez v. Srio. de Instrucción_, 109 D.P.R. 251, (1979); _Mari Bras v. Casañas_, 96 D.P.R. 15 (1968). No obstante, lo anterior no significa que el derecho de libertad de expresión sea absoluto, sino que podría llegar a subordinarse a otros intereses cuando la convivencia y necesidad pública así lo exijan. _Hernández Estrella v. Junta de Apelaciones del Sistema de Educacion Pública_, res. el 24 de marzo de 1999, 99 T.S.P.R. 30; _U.N.T.S. v. Srio. de Salud_, 133 D.P.R. 153 (1993); _Rodríguez v. Secretario de Instrucción_, 109 D.P.R. 251 (1979); _E.L.A. v. Rivera Rivera_, 105 D.P.R. 640 (1977); _A.A.A. v. Unión Empleados A.A.A._, supra; _E.L.A. v. Hermandad_, 104 D.P.R. 436 (1975); _Sucn. de Victoria v. Iglesia Pentecostal_, 102 D.P.R. 20 (1974). Empero, las limitaciones a la libertad de expresión serán interpretadas restrictivamente, de manera que no abarquen más de lo imprescindible. _Muñiz v. Administrador del Deporte Hípico_, res. el 8 de enero de 2002, 2002 T.S.P.R. 2; _Velázquez Pagán v. A.M.A._, 131 D.P.R. 568 (1992); _Rodríguez v. Srio. de Instrucción_, 109 D.P.R. 251, (1979); _Pueblo v. Burgos_, 75 D.P.R. 551, (1953); _Mari Bras v. Casañas_, _supra_.

Al analizar las controversias que surgen al amparo de nuestro derecho de libertad de expresión, es crucial distinguir entre la reglamentación que se dirige al contenido de la expresión y la reglamentación del tiempo, lugar y manera de la expresión, que es neutral en cuanto al contenido. K. Sullivan and G. Gunther, First Amendment Law, Nueva York, Ed. Foundation Press, 1999, pág. 193; véase, además, Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, Vol. II, 1998, pág. 1278 *et seq*.

En Muñiz v. Administrador del Deporte Hípico, *supra*, reconocimos la importancia de la distinción anterior.  Tanto el estándar que debe aplicar un tribunal al revisar una reglamentación que incide sobre el derecho de libertad de expresión, así como el peso de la prueba de quien la impugna, dependen de si ésta es neutral o no en cuanto al contenido. Id. Como norma general, una reglamentación limita el contenido de una expresión cuando favorece cierta expresión sobre otra por las ideas o puntos de vista que se transmiten. Turner Broadcasting system Inc. v. FCC, 512 U.S. 622 (1994). Asimismo, se entiende que el propósito es restringir el contenido de la expresión, si la reglamentación no puede justificarse sin hacer referencia a éste. Bartnicki v. W. Vopper, 532 U.S. 514 (2001).

Toda reglamentación gubernamental de este tipo, que discrimine por el contenido o punto de vista de la expresión, "se considera tan ominosa jurídicamente que se presume contraria a la Primera Enmienda de la Constitución Federal...

y a la Sección 4 del Artículo II de nuestra Constitución". (Citas

omitidas). Muñiz v. Administrador del Deporte Hípico, *supra*.

El profesor Tribe lo explica de la siguiente manera:

> Any adverse government action aimed at communicative
> impact is presumptively at odds with the first
> amendment. For if the constitutional guarantee means
> anything, it means that, ordinarily at least,
> government has no power to restrict expression
> because of its message, its ideas, its subject
> matter, or its content… And if the constitutional
> guarantee is not to be trivialized, it must mean that
> government cannot justify restrictions on free
> expression by reference to the adverse consequences
> of allowing certain ideas or information to enter the
> realm of discussion and awareness... the dangers of
> suppressing information and the dangers of its misuse
> if it is freely available is, ultimately, a choice
> that the First Amendment makes for us.
>
> [...]
>
> Few restrictions could be more offensive to a norm
> of viewpoint-neutrality than the government
> dictating the subjects about which persons may speak
> and the speakers who may address a public issue.[6]

La importancia de la distinción entre una regulación que

va dirigida al contenido o punto de vista de la expresión y las

regulaciones neutrales incide en que la primera, "por carecer

de neutralidad, es inconstitucional, trátese del foro que sea".[7]

Muñiz v. Administrador del Deporte Hípico, *supra*. Por lo tanto,

tiene que ser sometida a un escrutinio judicial estricto. Id.

El que defienda la regulación tiene el peso de probar que ésta

---

[6] (Citas omitidas). L. Tribe, *supra*, págs. 790-791, 795.

[7] Recientemente el Tribunal Supremo Federal emitió una decisión en la que se puede apreciar lo crucial que es hacer esta distinción al momento de examinar regulaciones que incidan sobre el derecho de libertad de expresión. Véase Thomas et *al*. v. Chicago Park District, Tribunal Supremo Federal, res. el 15 de enero de 2002.

es estrictamente necesaria para adelantar un interés apremiante

del Estado. Id.; Sable Communications of California v. FCC, 492

U.S. 115 (1989); United States v. Playboy Entertainment Group,

Inc., 529 U.S. 803 (2000).

En este mismo sentido, en Muñiz v. Administrador del

Deporte Hípico, *supra*, citamos ciertas expresiones del profesor

Tribe, las cuales reproducimos parcialmente por su manifiesta

pertinencia a la controversia del caso de autos:

> ...When the government clearly takes aim at a
> disfavored message, as on [content-based or point of
> view regulations], it makes no difference where the
> speech occurs or even what means, verbal or
> nonverbal, the speaker uses to communicate it. In
> cases such as these, public forum classifications are
> unnecessary and unhelpful. It is only when law does
> not regulate the content of messages as such, and when
> there is no evidence of a governmental motive to
> discriminate in favor of or against a particular
> viewpoint, that the Court properly inquires into such
> factors as the place of the speech, the character of
> the particular activity being regulated, and the
> nature of the restriction imposed.[8]

De otra parte, cuando nos enfrentamos a una regulación que

limita el derecho de libertad de expresión, no en cuanto al

contenido, sino en cuanto al tiempo, lugar y manera de

expresarse, el escrutinio judicial aplicable dependerá del foro

al cual ésta se refiera. Coss y U.P.R. v. C.E.E., *supra*;

Fraticelli v. Cintrón Antonsanti, 122 D.P.R. 229 (1988). Así,

podría aplicarse un escrutinio estricto en los foros públicos

tradicionales o por designación, o uno de razonabilidad en los

foros públicos no tradicionales.  Id.

La regulación en controversia en el caso de autos es una que claramente se refiere al contenido de la expresión. Nótese, que el Departamento no le prohíbe a la Asociación de Maestros tener acceso a los planteles escolares públicos para comunicarse con las personas que allí laboran. En efecto, la Asociación de Maestros puede reunir a los empleados unionados y no unionados del Departamento en las escuelas, durante horas no laborables, para orientarlos sobre cualquier tema consistente con sus intereses. El Departamento, no obstante, proscribe que en los predios de las escuelas, la Asociación de Maestros discuta con los empleados unionados los términos y condiciones de empleo. Dichos asuntos, según el Departamento, son de la competencia exclusiva de las organizaciones sindicales incumbentes y, por lo tanto, sólo éstas tienen derecho a discutirlos con los empleados unionados en los planteles escolares públicos.

En este sentido, la reglamentación le prohíbe a la Asociación de Maestros expresarse respecto a ciertos asuntos, sobre los cuales otras organizaciones sí pueden hacerlo. Así, se favorece una expresión sobre otra. El fundamento de esta prohibición recae sobre la identidad de la Asociación de Maestros y en el efecto que sus ideas podrían tener sobre los trabajadores. Procede, entonces, que evaluemos los hechos del caso de marras a la luz de un escrutinio judicial estricto. Debemos plantearnos ¿es esta reglamentación estrictamente

---

[8] L. Tribe, American Constitutional Law, 2nd ed., Ed. Foundation

necesaria para adelantar un interés gubernamental apremiante? Veamos.

IV.

En su alegato ante nos, el Departamento manifiesta varias razones por las cuales debería sostenerse la referida regulación. Primero, se alega que debido a que la Asociación de Maestros y Educadores Puertorriqueños no ostentan la representación exclusiva de ningún grupo de empleados del Departamento bajo la Ley de Sindicación de Empleados Públicos, *supra*, su solicitud para orientar a los empleados unionados sobre términos y condiciones de empleo es improcedente. Esta pretensión por parte de la Asociación de Maestros, arguye el Departamento, "crearía un alto potencial de inestabilidad laboral y expondría al Departamento de Educación a reclamos del representante exclusivo de permitir la intervención indebida de [la Asociación de Maestros y Educadores Puertorriqueños] con asuntos que pueden dilucidarse únicamente por medio de éste". A pesar de que reconocemos que este argumento podría ser válido en cierto contexto, entendemos que es improcedente en el presente caso. Veamos porqué.

La Ley de Sindicación de Empleados Públicos, *supra*, le reconoció a los empleados de las agencias públicas el derecho de organizarse y afiliarse a una organización sindical para que los represente con carácter de exclusividad ante el patrono. Art. 4, sec. 4.5 de la Ley de Sindicación de Empleados Públicos,

_____

Press, 1988, págs. 789-90.

*supra*, 3 L.P.R.A. sec. 1451b.  No podrá haber más de una organización sindical que represente a los empleados incluidos en la unidad apropiada. Art. 4, sec. 4.1 de la Ley de Sindicación de Empleados Públicos,  3 L.P.R.A. sec. 1451f. Es decir, una vez los empleados escojan a una organización sindical como su representante y ésta sea certificada por la Comisión de Relaciones del Trabajo del Servicio Público, el patrono está impedido de negociar con cualquier otra organización distinta a ésta los términos y condiciones de empleo de la unidad apropiada correspondiente. Art. 3(bb) de la Ley de Sindicación de Empleados Públicos,  3 L.P.R.A. sec. 1451a(bb). Esto es lo que conocemos como el principio de representación exclusiva.

Ahora bien, el principio de representación exclusiva sólo le garantiza a la organización sindical incumbente que ninguna organización distinta a ésta podrá negociar con el patrono los términos y condiciones de empleo de los trabajadores que compongan cierta unidad apropiada. Demetrio Fernández y Celina Romany, <u>Derecho Laboral: Casos y Materiales</u>, Ed. de la U.P.R., Tomo I, 1987, pág. 329.  Esto no significa que otras organizaciones no puedan comunicarse <u>con los empleados</u> sobre asuntos que les interesen a estos últimos, aún cuando se trate de los términos y condiciones de empleo acordados en el convenio colectivo.

Es evidente, por lo tanto, que la Asociación de Maestros no está interfiriendo con las facultades y derechos del representante exclusivo de los empleados unionados del

Departamento. Primero, la Asociación de Maestros no ha solicitado tener acceso a los planteles escolares para conversar con el patrono, sino con los empleados. Segundo, la Asociación de Maestros no tiene capacidad para comparecer ante el patrono a presentar reclamos de los empleados o a participar en el proceso de negociación colectiva, puesto que no es una organización sindical según lo define la Ley de Sindicación de Empleados Públicos, *supra*, en su Art.3(bb), 3 L.P.R.A. sec. 1451a(bb). Por consiguiente, queda descartada la posibilidad de que el principio de representación exclusiva se afecte por el hecho de que la Asociación de Maestros oriente a los empleados unionados sobre términos y condiciones de empleo en los predios de las escuelas públicas. Por lo tanto, la regulación en controversia, además de no tener relación con su alegado propósito, tiene el efecto directo de restringir ilegalmente la libertad de expresión de la Asociación de Maestros.

El efecto práctico de la actuación del Departamento es concederle a la organización sindical incumbente la exclusividad sobre la expresión de un tema en particular; esto es, el Departamento sólo permite que quien se exprese sobre ciertos temas laborales sea la Federación de Maestros de Puerto Rico. Esto constituye una preferencia de una expresión sobre otra, lo cual, por sí mismo, es contrario a los principios del derecho de libertad de expresión. Police Department v. Moesly, 408 U.S. 92 (1972); Carey v. Brown, 447 U.S. 455 (1980), (the notion that there is a state interest in fostering a private

monopoly on any form of communications is at war with the
principle that the desire to favor one form of speech over all
others is not merely trivial; it is illegitimate"); véase,
además, Stephen E. Woodbury, Protecting Insurgent Teacher's
Unions: Evaluating the Constitutionality of Exclusive Access
to school Communications Facilities, 15 U. Mich. J. L. Ref.
597 (1982).

Al amparo de nuestro derecho constitucional y las
disposiciones de la Constitución Federal sobre Primera
Enmienda, el Estado no puede disponer qué temas se pueden
discutir ni señalar qué personas están autorizadas a
abordarlos. First National Bank of Boston v. Bellotti, 435 U.S.
765 (1978). "Especially where, as here, the legislature's
suppression of speech suggest an attempt to give one side of
a debatable public question an advantage in expressing its view
to the people, the First Amendment is plainly offended". Id.

En segundo lugar, el Departamento argumenta como
justificación el interés que tiene el Estado en mantener los
planteles escolares públicos libres de "la inherente fogosidad
del movimiento laboral". En otras palabras, se prohíbe el uso
de cierta expresión por el efecto que pueda producir en quien
la escucha. No obstante, para sostener una restricción al
derecho de libertad de expresión como la que discutimos en el
presente caso, se requiere prevalecer un escrutinio judicial
estricto. A pesar de que la armonía en los planteles escolares
es un interés gubernamental legítimo, el Estado no puede

utilizarlo como justificación para evitar las discrepancias que inevitablemente pueden surgir de la expresión de ideas controversiales o menos populares.

El mero deseo de mantener un ambiente de paz, orden y camaradería en los predios escolares, legítimo como es, no es suficiente. La amenaza a la enseñanza pública tiene que ser real. En este sentido, el Departamento carece de un interés que pueda catalogarse como apremiante y no ha traído a nuestra consideración hechos que demuestren que la referida reglamentación es estrictamente necesaria en este caso.

En este mismo contexto, el más alto foro federal expresó en F. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507-510, (1969), lo siguiente:

> In our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expresión". "In order for [...] school officials to justify prohibition [on school premises] of a particular expression of opinion, [they] must be able to show that (their) action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Any word spoken, in the lunchroom or on the campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our constitution says we must take the risk […] [S]chool authorities must produce facts which might reasonably have lead [them] to forecast substantial disruption of or material interference with school activities […]

En el presente caso, el tribunal de instancia no hizo ninguna determinación de hecho dirigida a demostrar que la eficiencia e integridad del servicio de enseñanza sufren amenaza de verse afectados. Del expediente ante nuestra

consideración tampoco surgen circunstancias que nos lleven a tal conclusión, más allá de meras alegaciones por parte del Departamento. Esta veda o censura previa de las ideas de la Asociación de Maestros no puede sostenerse con justificaciones que no estén fundamentadas en evidencia material. Como vemos, en el caso de marras el Departamento no descargó el peso de la prueba necesario para demostrar que la regulación en controversia es estrictamente necesaria para adelantar un interés gubernamental apremiante.

Valga puntualizar, además, que las actividades de la Asociación de Maestros que el Departamento intenta regular son parte de los derechos que la Ley de Sindicación de Empleados Públicos, *supra*, le reconoce a los empleados públicos. Dicha legislación le reconoce el derecho a organizarse y afiliarse a organizaciones sindicales, a solicitar la certificación de la organización sindical de su preferencia y a participar activamente en el proceso para la certificación, así como también, a solicitar la descertificación del representante exclusivo incumbente y a ratificar mediante votación secreta todo convenio colectivo antes de que éste entre en vigor. Art. 4, secs. 4.1, 4.6, 4.8 y Art. 5, sec. 5.4, 3 L.P.R.A. secs. 1451b, 1452g, 1451i y 1451m. Obviamente, está implícito en estos derechos su facultad para llevar a cabo la campaña de orientación que estimen pertinente con el fin de promover la certificación de la organización sindical de su preferencia como su representante exclusivo. ¿Cómo los maestros del sistema

de educación pública del país van a lograr la certificación o descertificación de una organización sindical o la ratificación de un convenio, si se les restringe sus posibilidades de orientación y discusión sobre los términos y condiciones de empleo, los cuales son en esencia las variables principales para la toma de estas decisiones?

Al interpretar La Ley Federal de Relaciones del Trabajo, conocida como la "Labor Management Relations Act", 29 U.S.C.A. sec. 141, *et seq.*, el Tribunal Supremo Federal reconoció que al amparo del derecho a organizarse y a afiliarse a organizaciones sindicales que tienen los empleados del sector privado, el patrono no puede impedir que éstos ejerzan dicho derecho en el lugar del trabajo, durante horas no laborables, a menos que pueda demostrar que dicha restricción es necesaria para mantener el buen funcionamiento del negocio y la disciplina en el lugar del trabajo. NLRB v. Magnavox, 415 U.S. 322 (1974); Hudgens v. NLRB, 424 US 507 (1976); Republic Aviation Corp. NLRB, 324 US 793 (1945).

Precisamente en NLRB v. Magnavox, *supra*, el alto foro federal expresó que:

> The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees. So long as the distribution is by employees to employees and so long as the in-plant solicitation is on nonworking time, banning of that solicitation might seriously dilute § 7 rights. For Congress declared in § 1 of the Act that it was the policy of the United States to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing"…

[…]

> …Moreover, a limitation of the right of in-plant distribution of literature to employees opposing the union does not give a fair balance to § 7 rights, as the Board ruled in the present case. For employees supporting the union have as secure § 7 rights as those in opposition… It is the board's function to strike a balance among conflicting legitimate interests which will effectuate national labor policy, including those who support versus those who oppose the union. (Citas omitidas).

Claro está, si se le reconoce la facultad a los empleados en el sector privado de ejercer su derecho a llevar a cabo actividades sindicales en el lugar de trabajo, con más razón procede tal conclusión en el contexto de las relaciones laborales en el sector público, dadas las garantías constitucionales presentes en dicho contexto. Por consiguiente, entendemos que los maestros de nuestro sistema de educación pública tienen el derecho de realizar en su lugar de trabajo las actividades que estimen necesarias para lograr sus objetivos bajo la Ley de Sindicación de Empleados Públicos, *supra*, siempre que mantengan la disciplina y no se afecte el servicio público. NLRB v. Magnavox, *supra*; Hudgens v. NLRB, *supra*; Republic Aviation Corp. NLRB, *supra*; véase además, Puerto Rico Telephone Co. v. Unión Independiente de Empleados Telefónicos, 131 D.P.R. 171, (1992); Rodríguez v. Secretario, 109 D.P.R. 251 (1979). El Departamento no puede restringir el ejercicio de los derechos mencionados arriba dentro de los planteles escolares públicos, a menos que pueda demostrar que dicha restricción es necesaria para mantener el orden o la

eficiencia del servicio público.  Esta norma es afín con la obligación del patrono de abstenerse de intervenir, coartar o restringir cualesquiera de los derechos que reconoce la Ley de Sindicación de Empleados Públicos, *supra*. Art. 9, sec. 9.1, 3 L.P.R.A. sec. 1452a(a).

Como vemos, la propia Ley de Sindicación de Empleados Públicos, *supra*, provee los mecanismos para que los empleados públicos promuevan activamente la organización sindical de su preferencia independientemente de que exista otra organización incumbente.  En otras palabras, lo que el Departamento entiende que es una actividad con alto potencial de inestabilidad laboral, es precisamente el tipo de actividad a que tienen derecho los maestros cuando optan por organizarse para la negociación colectiva.

Finalmente, el hecho de que la Asociación de Maestros tenga otros medios para comunicarse con los empleados unionados es totalmente irrelevante. El Estado no puede justificar una restricción del contenido de la expresión bajo el fundamento de que existen otros medios disponibles para comunicarse. Consolidate Edison Co. v. Public Service Comm'n, 447 U.S. 530 (1980); Spence v. Washington, 418 U.S. 405 (1974); Schneider v. State, 308 U.S. 147 (1939).

Conforme a lo anterior, se revoca el dictamen del Tribunal del Circuito de Apelaciones. Resolvemos que el Departamento de Educación no puede prohibirle a la Asociación de Maestros de Puerto Rico y a Educadores Puertorriqueños en Acción que se

expresen sobre los términos y condiciones de empleos en los planteles escolares públicos durante horas no laborables, incluyendo la hora de almuerzo, al dirigirse a todo el personal adscrito al Departamento de Educación, sean o no afiliados de sus organizaciones.


        Se dictará la Sentencia correspondiente.



                              FEDERICO HERNÁNDEZ DENTON
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros de
Puerto Rico
    Demandantes-Apelantes

       vs.

Secretario del Departamento        AC-2001-5       Certiorari
de Educación, et al.
    Demandados-Apelados

Educadores Puertorriqueños
en Acción, *et al.*
    Interventores


SENTENCIA


San Juan, Puerto Rico, a 9 de mayo de 2002.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca el dictamen del Tribunal del Circuito de Apelaciones y en su consecuencia resolvemos que el Departamento de Educación no puede prohibirle a la Asociación de Maestros de Puerto Rico y a Educadores Puertorriqueños en Acción que se expresen sobre los términos y condiciones de empleos en los planteles escolares públicos durante horas no laborables, incluyendo la hora de almuerzo, al dirigirse a todo el personal adscrito al Departamento de Educación, sean o no afiliados de sus organizaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión escrita.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo