Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| FERNANDA VELÁZQUEZ PINTO; CHARLIE VÁZQUEZ MARTÍNEZ; JOSÉ RODRÍGUEZ CORNIER; NOEL GARCÍA LUGO; ILIA DATIZ RODRÍGUEZ; AARON GARNET FOJO; ARCEDES VARGAS ORTIZ; JUAN C. CÁCERES JIMÉNEZ; ROGELIO SANTIAGO MARTÍNEZ; ESAÚ RUIZ MUÑIZ; JUAN A. ROJAS RAMOS; CARLOS ÁLVAREZ RAMOS; WIGBERTO MONTANO QUIÑONES; LUIS A. FIGUEROA RAMOS; ÁNGEL M. SANTIAGO ÑÚÑEZ; CARLOS GONZÁLEZ GONZÁLEZ; MARÍA SANTIAGO ACEVEDO; DIOSDADO SANTIAGO ACEVEDO; MANUEL SÁNCHEZ CÁCERES; DANIEL RAMOS RAMOS; LUIS A. RODRÍGUEZ RAMOS; JUAN DÁVILA BURGOS; PABLO A. IRIZARRY AYALA; SEGUNDO ACEVEDO HERNÁNDEZ; PELEGRIN ALFONZO MARRERO; CELSO NIEVES ROSARIO; CARLOS PENA SERRANO; GREGORIO DURÁN MALAVÉ; GUALBERTO RIVAS DELGADO; JUAN A. PLAZA ROMÁN; HÉCTOR R. HERNÁNDEZ ACEVEDO; JOSÉ W. RIVAS MEDINA; VÍCTOR A. MEDINA MARTÍNEZ; CARLOS R. DÍAZ CINTRÓN; JESÚS RIVERA COLÓN <br><br> Apelantes <br><br> v. <br><br> NEGOCIADO DE LA POLICÍA DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO; JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO <br><br> Apelados | KLAN202300838 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Caso Núm. SJ2022CV10407 <br><br> Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2024.

Comparece ante nos la Sra. Fernanda Velázquez Pinto junto a otros treinta y cuatro (34) policías jubilados (en adelante, "apelantes"), para que revoquemos la *Sentencia* emitida y notificada el 7 de agosto de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Mediante dicho dictamen, desestimó la demanda de sentencia declaratoria contra el Gobierno de Puerto Rico, el Negociado de la Policía de Puerto Rico (en adelante, "Negociado") y la Junta de Retiro del Gobierno de Puerto Rico (en adelante, "Junta de Retiro"), por falta de legitimación activa.

Perfeccionado el recurso de apelación, procedemos a **confirmar** la *Sentencia* apelada. **Veamos.**

**-I-**

El **29 de noviembre de 2022**, los apelantes presentaron una *Demanda* de sentencia declaratoria contra el Estado Libre Asociado de Puerto Rico (en adelante, "Estado") y el Negociado.[1] En resumen, alegaron que todos se graduaron de sus academias antes del año 1990 y recibieron sus pensiones al amparo de la Ley Núm. 447 de 15 de mayo de 1951,[2] entre las enmiendas a la Ley Núm. 447-1951, se colocó a los miembros de la Policía de Puerto Rico y los del Cuerpo de Bomberos de Puerto Rico en una categoría aparte, por los riesgos a los que se exponían diariamente. Señalaron que originalmente los cómputos de pensión establecieron un 75% de su salario promedio, si contaban con un mínimo de treinta (30) años de servicio y una edad mínima de cincuenta y cinco (55) años; o, una pensión basada en el 65% del salario con treinta (30) años de servicio sin requisito de edad mínima. Sin embargo, la pensión se redujo a 50% del salario devengado si ingresaban al Sistema de Retiro antes del 1 de abril de 1990 y habían cumplido los cincuenta y cinco (55) años de edad. Posteriormente, la pensión se redujo a 40% del salario a los

---

[1] Anejo XXV de la *Apelación*, págs. 163-169.
[2] 3 LPRA sec. 761 et seq.

pensionados bajo la Ley Núm. 447-1951 y a un 29% del salario a los pensionados bajo la Ley Núm. 1-1990. No obstante, alegan que el 3 de agosto de 2020 fue aprobada la Ley Núm. 80-2020,[3] conocida como la "*Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos*" (en adelante "Ley Núm. 80-2020"), la cual discrimina ilegalmente en contra de ellos al conceder al Policía una pensión de 50% de la retribución, equivalente a la compensación bruta anualmente devengada en los últimos tres (3) años. Alegaron que la Ley Núm. 80-2020 trataba de manera distinta a personas en circunstancias similares, de forma arbitraria, sin base racional, y contraria a la letra clara del estatuto, violando el debido proceso de ley y la igual protección de las leyes.[4] Por lo que procedía solicitar una interpretación de estatutos y declaración de derechos. Además, solicitaron que se les otorgara trato igual en el porciento de pensiones recibidas que a otros miembros de la policía.[5]

Posteriormente, el **19 de diciembre de 2022**, los apelantes presentaron una demanda enmendada a los efectos de añadir a la Junta de Retiro como parte demandada.[6] Así las cosas, el **12 de enero de 2023**, los apelantes acreditaron el diligenciamiento del emplazamiento dirigido a la Junta de Retiro y el TPI se dio por enterado.[7]

El **14 de febrero de 2023**, el Estado solicitó la desestimación de la demanda,[8] amparado en que los reclamos de las pensiones presentados por los apelantes no estaban bajo la competencia del Negociado, ya que la Junta de Retiro y su Administrador son los llamados para administrar las pensiones de los policías retirados y

---

[3] Ley Núm. 80 de 3 de Agosto de 2020, conocida como la "Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos". 3 LPRA, sec. 10011 *et. seq.*
[4] *Id.*
[5] *Id.*
[6] Anejos XXIX y XXX de la *Apelación*, págs. 136-150.
[7] Anejos XVIII y XIX de la *Apelación*, págs. 111-115.
[8] Anejo XVII de la *Apelación*, págs. 84-110.

cualquier reclamo relacionado. Además, el Estado puntualizó que la Ley Núm. 80-2020 fue dejada sin efecto mediante un acuerdo de la Junta de Supervisión y Administración Financiera de Puerto Rico (en adelante, "FSAF") con el Gobierno de Puerto Rico ante su inconsistencia con el Plan Fiscal. También aclaró que, aunque estuviera vigente, el estatuto excluía expresamente a los miembros del sistema de rango del Negociado. En consecuencia, el Estado esgrimió que los apelantes no sufrían un daño claro, palpable y concreto, sino abstracto e hipotético; por lo que carecían de legitimación activa y el caso no era justiciable. En la alternativa, planteó que los apelantes carecían de una reclamación que justificara la concesión de un remedio.[9]

El **6 de marzo de 2023**, los apelantes se opusieron a la desestimación.[10] En síntesis, plantearon que el Negociado era parte indispensable porque fue el que tramitó el retiro de todos los apelantes. También esbozaron que la Ley Núm. 80-2020 se trae para demostrar el trato discriminatorio y que los daños sufridos no eran hipotéticos, pues vivían en estado precario.

Ese mismo día —6 de marzo de 2023—, la Junta de Retiro también solicitó la desestimación de la demanda,[11] ya que la controversia se tornó académica, al ser invalidada la Ley Núm. 80-2020. Además adujo que, de todos modos la Ley Núm. 80-2020 no aplicaba a los miembros del Negociado pertenecientes al Sistema de Rango. Puntualizó que los apelantes son todos jubilados, quienes no aportan al Sistema de Retiro y no son miembros de la policía en circunstancias similares. Por su parte, los apelantes se opusieron a la desestimación.[12]

---

[9] *Id.*
[10] Anejo XV de la *Apelación*, págs. 77-82.
[11] Anejo XIV de la *Apelación*, págs. 63-76.
[12] Anejo XI de la *Apelación*, págs. 55-60.

Así, el **7 de agosto de 2023** el TPI emitió y notificó la *Sentencia* apelada,[13] en la cual, desestimó la demanda de sentencia declaratoria contra el Estado, el Negociado y la Junta de Retiro, ya que los apelantes no demostraron: (1) tener legitimación activa al no establecer un daño real, palpable, inmediato y preciso; (2) un nexo causal entre el planteamiento de que viven en estado precario y la ley ya invalidada o cómo la invalidación de la referida ley resolvería ese daño; (3) un peligro potencial que ameritara una sentencia declaratoria; (4) ni presentaron una incertidumbre o controversia que requiriera finalidad; (5) ni demostraron ser parte de una clasificación sospechosa o que existiera un prejuicio contra ellos.[14] Además, el caso se tornó académico ante la invalidación de la Ley Núm. 80-2020 por la JSAF. Concluyó que la demanda no exponía una reclamación que justificara la concesión de un remedio.

El **22 de agosto de 2022**, los apelantes solicitaron una reconsideración de la *Sentencia.*[15] Plantearon que ni el Gobierno Federal ni la JSF han ocupado el campo en la aprobación de leyes y del presupuesto en Puerto Rico. Ese mismo día, el TPI la declaró **No Ha Lugar**.[16]

Inconformes, el **20 de septiembre de 2023** los apelantes acudieron ante esta Curia e imputaron la comisión de los siguientes errores:

> *ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA EL ESTADO LIBRE ASOCIADO Y EL NEGOCIADO DE LA POLICÍA DE PUERTO RICO BASADA EN QUE LOS DEMANDANTES NO TIENE[N] LEGITIMACIÓ[N] OR STANDING [sic] EN EL PRESENTE CASO[.]*

> *ERRÓ EL HONORABLE TRIBUNAL DE PRIEMERA [sic] INSTANCIA AL DESESTIMAR LA DEMANDA CONTRA LA JUNTA DE RETIRO POR ALEGADAMENTE ESTAR EL CAMPO OCUPADO POR LA JUNTA DE CONTROL FISCAL.*

---

[13] Anejo III de la *Apelación*, págs. 10-24.
[14] *Id.*
[15] Anejo II de la *Apelación*, págs. 2-9.
[16] Anejos I de la *Apelación*, pág. 1.

El **25 de octubre de 2023**, la Junta de Retiro presentó un escrito intitulado *Oposición a Apelación.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**-II-**

**-A-**

El Tribunal Supremo de Puerto Rico ha sido claro en que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[17] La citada norma de deferencia también es aplicable a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[18]*

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[19] Por lo tanto, para realizarla adecuadamente nuestro Alto Foro Judicial indica expresamente que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[20]

**-B-**

Es conocido que las alegaciones de una demanda tienen como propósito bosquejar o notificar a grandes rasgos cuáles son las reclamaciones y las defensas de las partes. En ese sentido, la Regla 6.1 de Procedimiento Civil dispone que una alegación que exponga

---

[17] *Coop. Seguros Múltiples de PR v. Lugo,* 136 DPR 203, 208 (1994).
[18] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[19] *Id.*
[20] *Id.*

una solicitud de remedio debe contener *"una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio"*.[21]

Cónsono con lo anterior, la Regla 10.2 de Procedimiento Civil establece —además de otras— la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio como fundamento para solicitar la desestimación de una causa de acción.[22] En lo pertinente, la referida Regla dispone, que:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:*
> *(1) falta de jurisdicción sobre la materia;*
> *(2) falta de jurisdicción sobre la persona;*
> *(3) insuficiencia del emplazamiento;*
> *(4) insuficiencia del diligenciamiento del emplazamiento;*
> *(5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;*
> *(6) dejar de acumular una parte indispensable. [...].*[23]

En lo concerniente a nuestra controversia se ha resuelto que, ante la presentación de una moción de desestimación basada en la quinta defensa de dicha Regla, los foros judiciales *debemos tomar como ciertas todas las alegaciones fácticas plasmadas en la demanda*.[24] En ese sentido, estamos obligados a interpretar las aseveraciones de la parte demandante en forma conjunta, de la manera más favorable y liberal, formulando a su favor todas las inferencias que puedan asistirle.[25]

De esta forma, los tribunales debemos razonar —*si a la luz de la situación más favorable al demandante y resolviendo las dudas a su favor*— la demanda es suficiente para constituir una reclamación válida.[26]

---

[21] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 6.1. *Énfasis suplido.*
[22] 32 LPRA Ap. V, R. 10.2.
[23] *Id. Énfasis suplido.*
[24] *Colón v. Lotería,* 167 DPR 625, 649 (2006).; *Roldán v. Lutrón, SM, Inc.,* 151 DPR 883, 889 (2000). *Énfasis suplido.*
[25] *Colón v. Lotería, supra,* pág. 649.
[26] *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). *Énfasis suplido.*

Conforme a lo antes dicho, la causa de acción no debe ser desestimada, a menos que el promovente de la moción demuestre que el demandante no tiene derecho a *remedio alguno* al amparo de cualquier estado de hechos que puedan ser evidenciados en apoyo a su causa de acción.[27]

En consecuencia, la desestimación procede cuando existen circunstancias que permiten a los tribunales determinar —sin ambages— que la demanda *adolece de todo mérito o que la parte no tiene derecho a obtener remedio alguno.*[28] En ese sentido, es apropiado reiterar que nuestro Tribunal Supremo ha sostenido firmemente la clara política pública judicial de que los casos se ventilen en sus méritos.[29] Como corolario a esa política, se ha recalcado que existe un trascendental interés en que todo litigante tenga su día en corte.[30]

**-C-**

Constituye una norma reiterada que los tribunales tenemos la ineludible tarea de auscultar si podemos atender y adjudicar los asuntos que se presenten ante nuestra consideración.[31] Es decir, nuestra jurisdicción está limitada a la existencia de casos y controversias, ya que como foros judiciales únicamente podemos resolver controversias genuinas entre partes opuestas, que tienen interés real en obtener un remedio que afecte sus relaciones jurídicas.[32]

En protección de este principio, es que se han desarrollado criterios de ***justiciabilidad*** para demarcar la facultad de entender, en un asunto, traído ante nuestra consideración. Entre estos criterios se encuentran la ***legitimación activa*** de la parte que

---

[27] *Colón v. Lotería, supra,* pág. 649. *Énfasis suplido.*
[28] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013). *Énfasis suplido.*
[29] *Datiz v. Hospital Episcopal,* 163 DPR 10, 20 (2004).
[30] *Id.*
[31] *Hernández, Romero v. Pol. de P.R.,* 177 DPR 121, 135 (2009.
[32] *Romero Barceló v. ELA,* 169 DPR 460, 470 (2006).

promueve el pleito y la ***academicidad*** de la controversia planteada.[33]

El requisito de ***legitimación activa*** para la justiciabilidad de una controversia, o sea, para que una controversia sea susceptible de adjudicación judicial, ejerce la función primordial de asegurarle al tribunal que la parte promovente tiene un interés en la acción de tal índole, que con toda probabilidad habrá de proseguir su causa de acción vigorosamente y que consecuentemente traerá a la atención del tribunal los asuntos en controversia.[34]

Para demostrar que cumple con el requisito de legitimación activa, el promovente de una acción debe demostrar: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido y la causa de acción ejercitada; y, (4) que la causa de acción surge al palio de la Constitución o de una ley.[35]

Nuestro Alto Foro ha pautado ciertas guías para que los tribunales evaluemos los planteamientos sobre legitimación activa. Lo más importante es que cuando se cuestiona la legitimación de una parte para entablar un pleito o una reclamación, el juzgador debe tomar como ciertas las alegaciones del reclamante, interpretándolas desde el punto de vista más favorable a este. De ahí, que es norma reiterada que los requisitos de legitimación activa deben interpretarse de forma flexible y liberal, ya que de lo contrario se negaría acceso a los tribunales a aquellas personas y entidades que sean adversamente afectadas por actuaciones del Estado o de personas particulares y que tienen reclamaciones que pueden ser atendidas debidamente por los tribunales.[36]

---

[33] *Romero Barceló v. ELA, supra*, pág. 470-471.
[34] *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 942-943 (2011); *Crespo v. Cintrón,* 159 DPR 290, 299 (2003).
[35] *Asoc. Fotoperiodistas v. Rivera Schatz, supra; Crespo v. Cintrón, supra.*
[36] *Crespo v. Cintrón, supra; Asoc. de Maestros v. Secretario de Educación*, 156 DPR 754, 765 (2002).

Por otra parte, un caso se torna **académico** cuando por el transcurso del tiempo —debido a cambios facticos o judiciales durante el trámite del litigio— el mismo pierde su carácter adversativo y el remedio que en su día pudiera concederse no tendría efectos prácticos.[37] La academicidad implica la falta de adversidad, en otras palabras, la ausencia de una controversia real entre las partes. En ese sentido, la doctrina de autolimitación judicial en discusión es de aplicación durante todas las fases de un pleito, lo que incluye la etapa apelativa o revisora, ya que es necesario que exista una controversia genuina entre las partes en todo momento.[38]

**-D-**

El **30 de junio de 2016**, el Congreso Federal de E.U. aprueba la ley federal *Puerto Rico Oversight, Management, and Economic Stability Act* (en adelante, "PROMESA"),[39] para la estructuración de la deuda del Gobierno de Puerto Rico. Por lo que el **3 de mayo de 2017**, la JSAF presentó en la Corte Federal para el Distrito de Puerto Rico una **petición de quiebras** bajo el Título III de la Ley Federal PROMESA a nombre del Gobierno de Puerto Rico para que entre otras cosas, reestructurar la deuda del Gobierno de PR, las corporaciones públicas y paralizar automáticamente toda acción civil que se haya iniciado o se intentara continuar contra el Gobierno y sus corporaciones públicas.

La doctrina de campo ocupado proviene de la cláusula de supremacía de la Constitución Federal de los Estados Unidos que postula: *"en caso de existir conflicto entre una ley estatal y una federal, ha de prevalecer esta sobre aquélla"*.[40] La misma aplica cuando cierto interés o propósito federal sea tan dominante que no deba existir reglamentación estatal o cuando la norma del estado

---

[37] *Angueira v. J.L.B.P.*, 150 DPR 10, 19 (2000).
[38] *Báez Díaz v. ELA*, 179 DPR 605, 617 (2010).
[39] 48 U.S.C. Secs. 21101 *et. seq.*
[40] *Vega v. Yiyi Motors, Inc.*, 146 DPR 373, 380 (1998).

pueda producir un resultado incompatible con los objetivos federales sobre determinado asunto.[41] Sin embargo, *"no se presumirá que la reglamentación federal sustituye a la reglamentación estatal por el hecho de que el Congreso reglamente un área de forma limitada"*.[42] En ausencia de una prohibición específica relativa a que la ley federal ocupa el campo, la legislación estatal que complementa la federal será válida siempre y cuando no esté sustancialmente en conflicto con la última.[43]

**-III-**

Los apelantes nos señalan dos (2) errores que se reduce a uno; a saber: que el TPI erró al desestimar la demanda por falta de legitimación activa y estar el campo ocupado por la JSAF. **No tienen razón.** Veamos.

Aun, tomando como ciertas las alegaciones hechas por los apelantes, la demanda no expone una reclamación que justifique la concesión de un remedio, pues la Ley Núm. 80-2022 fue invalidada por la JSAF de la ley PROMESA, por lo que la controversia se tornó académica. Además, la Ley Núm. 80-2020 no incluye al Negociado de la Policía de P.R. Nótese, que de haber incluido al Negociado en la referida Ley Núm. 80, se requería que los participantes aportaran al Sistema de Retiro al momento de la aprobación de dicha Ley. Sin embargo, surge de sus propias alegaciones, que los apelantes son todos jubilados, por lo cual, no aportan al Sistema de Retiro. Ello demuestra que no existe un daño real, palpable, claro, inmediato ni preciso. Tampoco hay un nexo causal entre la Ley Núm. 80-2020 invalidada par la JSAF y el alegado estado precario en el que viven, ni cómo invalidando la Ley Núm. 80-2020 saldrían de ese estado.

---

[41] *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5, 15 (2016).
[42] *Cotto Morales v. Ríos*, 140 DPR 604, 613 (1996).
[43] *Ibid.*

Siendo esto así, no existe en este caso una controversia genuina para dirimir, sino una abstracta e hipotética.

En fin, el TPI no desestimó la demanda basándose en la doctrina de campo ocupado, sino en la falta de legitimación activa de los apelantes y en la doctrina de academicidad. Dicha determinación no es producto de una actuación con prejuicio o parcialidad, un craso abuso de discreción, o una interpretación o aplicación errónea de cualquier norma procesal o de derecho sustantivo.

### -IV-

Por los fundamentos antes expuestos, resolvemos **confirmar** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones