EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José R. Izquierdo II<br><br>Recurrido<br><br>v.<br><br>Enrique (Kike) Cruz y otros<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 20<br><br>213 DPR ___ |

Número del Caso:  CC-2022-0847
                  cons. con CC-2023-0005


Fecha:  6 de marzo de 2024


Tribunal de Apelaciones:

     Panel I


**CC-2022-0847**

Abogados de la parte peticionaria:

     Lcdo. Manuel A. Pietrantoni Cabrera
     Lcda. Annie Lorena Ramírez Hernández
     Lcda. Melanie Pérez Rivera

Abogada de la parte recurrida:

     Lcda. Lizabel M. Negrón Vargas


**CC-2023-0005**

Abogados de la parte peticionaria:

     Lcdo. Arot L. Velazquez Travieso
     Lcdo. Alexis G. Rivera Medina
     Lcdo. Joel Andrews Cosme Morales

Abogada de la parte recurrida:

     Lcda. Lizabel M. Negrón Vargas


Materia:  Derecho Constitucional – Reconocimiento del privilegio cualificado del periodista; factores a evaluar ante una petición para que se divulgue una fuente o información confidencial en una acción por difamación.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José R. Izquierdo II

    Recurrido

      v.

Enrique (Kike) Cruz y otros

    Peticionarios

CC-2022-847

cons. con       *Certiorari*

CC-2023-5

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 6 de marzo de 2024.

El libre flujo de opiniones e ideas, sin lugar a dudas, constituye un pilar fundamental para el desarrollo individual y colectivo de los seres humanos en una sociedad democrática. **La apropiada disposición de este caso requiere que interpretemos si en nuestro ordenamiento constitucional existe <u>el privilegio cualificado del periodista</u>, como corolario del derecho a la libertad de expresión y de prensa consagrado en la Sec. 4 del Art. II de la Constitución de Puerto Rico, *infra*, frente a una solicitud para que un periodista divulgue sus fuentes o informaciones confidenciales en una acción por difamación. Por los fundamentos que discutiremos en esta Opinión, <u>adelantamos que sí</u>.**

Por consiguiente, al amparo de la referida disposición constitucional, hoy reconocemos por primera vez la existencia del privilegio cualificado del periodista en protección de sus fuentes e informaciones confidenciales. Así, resolvemos que -una vez establecida la pertinencia de la identidad de la fuente periodística o de la información confidencial para la adjudicación de una acción por difamación- los tribunales deben evaluar si la parte interesada en descubrir la información solicitada ha presentado prueba para establecer: (1) que lo publicado es falso y difamatorio; (2) que empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y (3) que es necesario conocer la identidad de la fuente o la información confidencial para establecer su causa de acción. Si se demuestran estos factores, el privilegio del periodista a no divulgar sus fuentes o informaciones confidenciales cedería ante el interés de la parte que solicita el descubrimiento, por lo que la información solicitada podría ser compelida. Por las razones que expondremos a continuación, modificamos el dictamen recurrido y devolvemos el caso al Tribunal de Primera Instancia para que evalúe estos criterios.

## I

Este caso tuvo su génesis el 18 de diciembre de 2020, cuando el Sr. José R. Izquierdo II (señor Izquierdo II o recurrido) presentó una *Demanda* sobre daños y perjuicios por libelo en contra del Sr. Enrique "Kike" Cruz (señor

Cruz o periodista), la Sra. Vivian López Álvarez, la Sociedad Legal de Gananciales compuesta por éstos y Publi-Inversiones Puerto Rico, Inc. (El Vocero) (en conjunto, peticionarios). En síntesis, el señor Izquierdo II sostuvo que allá para diciembre de 2017, a través de una columna publicada en el periódico El Vocero titulada "El acosador, el encubridor y sus víctimas" (la columna), el señor Cruz le imputó haber incurrido en conducta constitutiva de hostigamiento sexual. Aunque admitió que su nombre no fue mencionado en la columna, alegó que el periodista luego confirmó su identidad al realizar ciertas expresiones en un programa radial.

Según el señor Izquierdo II, después de la publicación periodística, éste fue destituido de su puesto como Director Ejecutivo de la Compañía de Turismo de Puerto Rico. Adujo que las imputaciones en su contra constituyeron declaraciones falsas y maliciosas que laceraron su imagen y reputación, ya que los alegados incidentes de hostigamiento sexual mientras se desempeñaba como Director Ejecutivo de la Compañía de Turismo de Puerto Rico nunca ocurrieron. Por consiguiente, solicitó una compensación de $5,000,000 por los daños que presuntamente sufrió como resultado de la publicación de la columna; $1,000,000 por las angustias mentales, y $300,000 por la pérdida de salarios.

Oportunamente, los peticionarios contestaron la *Demanda* y adujeron que no actuaron de manera negligente o

con malicia real. Luego de varias controversias surgidas durante el descubrimiento de prueba, el 28 de noviembre de 2021, el señor Izquierdo II solicitó al tribunal de instancia que ordenara a El Vocero a contestar un pliego de interrogatorios al amparo de la Regla 34.2 de Procedimiento Civil, 32 LPRA Ap. V. Posteriormente, el 18 de enero de 2022 y el 7 de febrero de 2022, el recurrido le solicitó al foro primario que, de acuerdo con la citada regla, ordenara al periodista a descubrir y contestar un pliego de interrogatorios, debido a que este último objetó gran parte de las preguntas y no fue responsivo en sus contestaciones. En específico, ciertos interrogatorios requerían que el periodista revelara la identidad de las personas mencionadas en la columna, mientras que otros interrogatorios iban dirigidos a exigir que se divulgara la identidad de las fuentes periodísticas. No obstante, **el señor Cruz se negó a identificar los nombres de las personas referidas en la columna por entender que no eran pertinentes a la causa de acción y se rehusó a revelar sus fuentes bajo el fundamento de que dicha información constituía materia privilegiada.**

En lo pertinente, el periodista presentó una *Oposición a "moción para compeler a Kike Cruz a descubrir lo solicitado" y solicitud de orden protectora* el 9 de marzo de 2022. Éste reiteró su objeción a varios interrogatorios por entender que el señor Izquierdo II pretendía añadir elementos no contemplados en la columna para establecer su

causa de acción, ya que en la publicación no se mencionaba el nombre del recurrido. Además, el señor Cruz reafirmó su oposición a revelar sus fuentes bajo el fundamento de ser materia privilegiada. Así pues, recurrió de forma persuasiva a las decisiones de otros tribunales de Estados Unidos que han reconocido la existencia de un privilegio cualificado del periodista frente a una solicitud para divulgar la identidad de sus fuentes confidenciales. Por último, adujo que revelar la fuente era innecesario para adelantar la reclamación y que el único motivo detrás de esa solicitud era el revanchismo.

Después de evaluar las mociones presentadas por el recurrido, así como los respectivos escritos en oposición presentados por los peticionarios, el Tribunal de Primera Instancia emitió una *Orden* el 12 de mayo de 2022. El foro de instancia resolvió que el periodista no tenía que contestar los interrogatorios relacionados con la identidad de las personas mencionadas en la columna. De igual forma, determinó que no tenía que revelar sus fuentes. En desacuerdo, el señor Izquierdo II presentó una moción de reconsideración ante el foro primario, la cual fue denegada mediante una *Resolución* emitida el 14 de junio de 2022 y notificada el 15 de junio de 2022.

Inconforme con la determinación emitida, el 14 de julio de 2022, el señor Izquierdo II presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En resumen, el recurrido adujo que el foro de instancia erró al negarle

la información solicitada. Así pues, sostuvo que dicha información era esencial para demostrar su causa de acción y alegó que la misma no estaba protegida por ningún privilegio evidenciario.

Por otra parte, los peticionarios se opusieron a la expedición del recurso. En esencia, plantearon ante el tribunal apelativo intermedio que la identidad de las personas que eran objeto de la columna carecía de pertinencia para fines de la causa de acción del señor Izquierdo II, pues era este último quien tenía que demostrar que el artículo se refería a su persona. También alegaron que, a la luz de un balance de los intereses implicados en el descubrimiento de prueba, no debía permitirse que se revelaran las fuentes periodísticas. Por ende, expresaron que el foro primario no abusó de su discreción ni incurrió en prejuicio, parcialidad o error manifiesto al emitir su dictamen.

Posteriormente, el Tribunal de Apelaciones expidió el recurso de *certiorari* y modificó la *Orden* emitida por el foro de instancia en cuanto al pliego de interrogatorios que le fue cursado al periodista. Así las cosas, mediante una *Sentencia* emitida el 27 de octubre de 2022 y notificada el 28 de octubre de 2022, **el foro apelativo intermedio resolvió que el periodista tenía que contestar los interrogatorios dirigidos a conocer la identidad de las personas mencionadas en la publicación, ya que las preguntas -a juicio del tribunal apelativo- <u>eran</u>**

**pertinentes a la reclamación.**[1] **De igual forma, el foro apelativo intermedio determinó que el señor Cruz debía divulgar sus fuentes,** **pues concluyó que no aplicaba privilegio alguno.**[2] En consecuencia, los peticionarios presentaron una solicitud de reconsideración, la cual fue denegada por el Tribunal de Apelaciones mediante una *Resolución* emitida el 28 de noviembre de 2022 y notificada el 1 de diciembre de 2022.

Así las cosas, los peticionarios presentaron sus recursos de *certiorari* por separado ante este Tribunal el 29 de diciembre de 2022 y el 3 de enero de 2023, respectivamente. El Vocero, mediante el recurso CC-2022-847, realizó el señalamiento de error siguiente:

> Erró el Tribunal de Apelaciones al modificar la Orden del Tribunal de Primera Instancia a los efectos de que el Sr. Cruz divulgue las fuentes confidenciales que le brindaron la información para su opinión publicada en el periódico El Vocero, en contravención al privilegio del reportero.[3]

---

[1] El Tribunal de Apelaciones determinó que "[l]as preguntas 20, 21, 25, 26, 27[,] 30 y 31, mediante las cuales se requiere que el [p]eriodista identifique a quién se refiere la [columna], así como abunde sobre su contenido, deben ser contestadas. Se trata de asuntos claramente pertinentes a la reclamación […]". (Escolio omitido). *Sentencia del Tribunal de Apelaciones*, Apéndice del *certiorari* (recurso CC-2022-847), págs. 524-525.

[2] El Tribunal de Apelaciones razonó que "[d]e forma similar, deben ser contestadas las preguntas 15, 16, 19, 22, 23, 24 y 28, las cuales requieren que el [p]eriodista divulgue quién le suplió la información que él decidió publicar en la [columna], o bien qué gestiones hizo para concluir que la información era confiable". (Escolio omitido). Íd., págs. 525-526.

[3] Si bien no le correspondía a Publi-Inversiones Puerto Rico, Inc. (El Vocero) señalar este error, destacamos que el Sr. Enrique "Kike" Cruz (señor Cruz o periodista) lo planteó como parte de sus errores.

Por su parte, el señor Cruz, mediante el recurso CC-2023-0005, señaló como errores los siguientes:

> Erró el Tribunal de Apelaciones al no aplicar el privilegio cualificado del periodista que protege las fuentes a pesar de este privilegio haber sido reconocido a nivel federal a la luz de la Primera Enmienda.

> Erró el Tribunal de Apelaciones al concluir que es pertinente contestar ciertos interrogatorios que buscan revelar la fuente periodística y que se identifique al recurrido en una columna de opinión que no lo menciona, a pesar de que el [Tribunal de Primera Instancia] entendió que esto no era pertinente, siendo esto un abuso de discreción del foro intermedio.

> Erró el Tribunal de Apelaciones al obligar al compareciente a contestar preguntas de un interrogatorio que ya fueron contestadas y que el [Tribunal de Primera Instancia] consideró como contestadas, siendo esto un abuso de discreción del foro intermedio.

El 24 de febrero de 2023 expedimos los recursos de *certiorari* presentados y ordenamos la consolidación de éstos. Con el beneficio de los alegatos de las partes, el caso quedó sometido en los méritos para su adjudicación el 25 de mayo de 2023. Así las cosas, procedemos a exponer el marco jurídico aplicable a la presente controversia.

## II

### A. El alcance del descubrimiento de prueba

Los foros primarios gozan de una gran discreción para dirigir el descubrimiento de prueba. Cruz Flores *et al.* v. Hosp. Ryder *et al.*, 210 DPR 465, 496-496 (2022). Es norma reiterada que el proceso de descubrimiento de prueba debe ser amplio y liberal. Rivera *et al.* v. Arcos Dorados *et al.*, 2023 TSPR 65, 212 DPR ___ (2023); Cruz Flores

*et al*. v. Hosp. Ryder *et al.*, *supra*, pág. 496; McNeil Healthcare v. Mun. Las Piedras II, 206 DPR 659, 672 (2021). No obstante, existen dos (2) limitaciones al descubrimiento de prueba, a saber, "**[e]n primer lugar, es imperioso que el asunto que se pretende descubrir sea pertinente a la controversia que se dirime. Segundo, la materia que se pretende descubrir, aunque sea pertinente, no puede ser privilegiada o quedará excluida del alcance del descubrimiento de prueba**". (Negrilla suplida). Ponce Adv. Med. v. Santiago González *et al*., 197 DPR 891, 898-899 (2017).

En particular, la Regla 23.1 (a) de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone lo siguiente:

> [l]as partes podrán hacer descubrimiento sobre cualquier materia, **no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente**, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. (Negrilla suplida).

A esos efectos, aun si un tribunal determina que la información solicitada es pertinente, le corresponde evaluar si se configuran los requisitos para el reconocimiento de algún privilegio. El profesor Ernesto L. Chiesa Aponte nos indica que los privilegios deben surgir de la ley, es decir, de la Constitución, las

reglas de evidencia o las leyes especiales. E.L. Chiesa Aponte, *Tratado de derecho probatorio*, República Dominicana, Ed. Corripio, [s. año], T. I, pág. 188. Así pues, más allá de los privilegios establecidos en las Reglas de Evidencia de Puerto Rico, existen "**otros privilegios en desarrollo o reconocidos en otras jurisdicciones, algunos con cierta base constitucional, como el privilegio del periodista**". (Negrilla y subrayado suplidos). Chiesa Aponte, *op. cit.*, pág. 317.

En conformidad con lo expuesto, es viable que en nuestro ordenamiento surjan privilegios como corolario de ciertas normas constitucionales, **de forma que podría "derivar[se] un privilegio del periodista, en relación con las fuentes de información, lo que todavía no ha sido aprobado por la Corte Suprema [f]ederal**". (Negrilla suplida). Chiesa Aponte, *op. cit.*, pág. 189 esc. 15. Esto nos lleva a expresarnos por primera vez sobre la posible existencia de un privilegio del periodista al amparo de nuestro ordenamiento constitucional, pues se encuentra estrechamente vinculado al derecho a la libertad de expresión y de prensa.

**B. La libertad de expresión y de prensa**

La Sec. 4 del Art. II de la Constitución de Puerto Rico consagra el derecho fundamental a la libertad de expresión al disponer que "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la

reparación de agravios". Art. II, Sec. 4, Const. PR, LPRA, Tomo 1, ed. 2023, págs. 292-293. Según surge de las deliberaciones entre los miembros de la Convención Constituyente, esta disposición constitucional abarca "el ámbito general de la libertad de conciencia, de pensamiento, de expresión, **y las actividades propias para ejercitar a plenitud[,] dentro de la más dilatada libertad[,] la totalidad de [los] derechos**". (Negrilla suplida). 4 Diario de Sesiones de la Convención Constituyente 2564 (2003). Así pues, esta garantía "**faculta el desarrollo pleno del individuo y estimula el libre intercambio y la diversidad de ideas, elementos vitales del proceso democrático**". (Cita depurada y negrilla suplida). U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 286 (2010).

Hemos manifestado que "[e]ntre las libertades individuales, la libertad de expresión es probablemente la más esencial, una vez garantizado el derecho a la vida y a la libertad física". Asoc. de Maestros v. Srio. de Educación, 156 DPR 754, 767 (2002). Se trata, pues, de una garantía dirigida a proteger el derecho de cada ciudadano a exteriorizar libremente el contenido de su conciencia e instaurar la premisa indispensable para la formación de opinión pública, sobre cuyo régimen se funda un gobierno democrático. Íd., pág. 768. En ese sentido, "[e]ste Tribunal ha expresado reiteradamente que la libertad de expresión es una 'raíz indiscutible del sistema

democrático de gobierno'". <u>Vigoreaux Lorenzana v. Quizno's</u>, 173 DPR 254, 268 (2008) (citando a <u>Bonilla Medina v. P.N.P.</u>, 140 DPR 294, 299 (1996)). Véase, además, <u>Mari Bras v. Casañas</u>, 96 DPR 15, 20-21 (1968). Por tal razón, **"en la constelación de valores democráticos, goza de una primacía peculiar"**. (Negrilla suplida). <u>Coss y U.P.R. v. C.E.E.</u>, 137 DPR 877, 886 (1995).

En armonía con lo anterior, este Foro está llamado a la más celosa protección de este derecho cardinal. <u>U.P.R. v. Laborde Torres y otros I</u>, *supra*, pág. 287; <u>Asoc. de Maestros v. Srio. de Educación</u>, *supra*, pág. 768. Ahora bien, **reconocemos que el derecho a la libertad de expresión, al igual que otros derechos constitucionales, <u>no es absoluto</u>**. <u>U.P.R. v. Laborde Torres y otros I</u>, *supra*; <u>Soto v. Srio. de Justicia</u>, 112 DPR 477, 493 (1982). En esa misma línea "hemos reiterado a la saciedad que el derecho a la libertad de palabra no está inmune a la imposición de limitaciones, siempre y cuando éstas sean interpretadas de forma restrictiva, de manera que no abarquen más de lo imprescindible". <u>U.P.R. v. Laborde Torres y otros I</u>, *supra*. Véanse, además: <u>Muñiz v. Admor. Deporte Hípico</u>, 156 DPR 18, 24 (2002); <u>Asoc. de Maestros v. Srio. de Educación</u>, *supra*, págs. 768-769; <u>Velázquez Pagán v. A.M.A.</u>, 131 DPR 568, 576 (1992). Es por ello que este derecho constitucional **"puede subordinarse a otros intereses cuando la necesidad y la conveniencia pública lo**

**requieran**".    (Cita depurada y negrilla suplida). U.P.R. v. Laborde Torres y otros I, *supra*.

Al enfrentarnos a una controversia relacionada con el derecho a la libertad de expresión y de prensa, debemos tener presente que esta protección encuentra su origen en los postulados de la Primera Enmienda de la Constitución de los Estados Unidos, Emda. I, Const. EE.UU., LPRA, Tomo 1, ed. 2023, pág. 182. Véase J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. UPR, 1982, Vol. III, pág. 181. Como sabemos, "[nuestra] sección corresponde a las restantes disposiciones de la [E]nmienda [P]rimera en la Constitución federal **e incorpora a nuestra constitución todo el derecho históricamente establecido con relación a la libertad de palabra, de prensa**, de reunión y de petición". (Negrilla suplida). 4 Diario de Sesiones, *supra*, T. 4, pág. 2564.

En particular, la Primera Enmienda de la Constitución federal establece que "[e]l Congreso no aprobará ninguna ley […] que coarte la libertad de palabra o prensa […]". Emda. I, Const. EE.UU., *supra*. Cabe destacar que, al tratarse de un derecho fundamental, esta garantía de libertad de palabra y de prensa aplica en Puerto Rico. Balzac v. People of Porto Rico, 258 US 298, 314 (1922). Véanse, además: Pueblo v. García Colón I, 182 DPR 129, 147 (2011); U.P.R. v. Laborde Torres y otros I, *supra*, pág. 288. En consecuencia, debemos interpretar y hacer efectiva la protección constitucional que provee nuestra

Carta de Derechos de manera compatible con el reconocimiento ofrecido por el Tribunal Supremo de Estados Unidos bajo la Constitución federal y "no en menor grado de protección". Pueblo v. García Colón I, *supra*, págs. 147-148.

## C. El privilegio del periodista

En Puerto Rico, al igual que en la mayoría de las jurisdicciones de Estados Unidos, no es nueva la discusión sobre el reconocimiento de algún tipo de privilegio a favor del periodista que se niega a revelar sus fuentes de información al amparo del derecho a la libertad de expresión y de prensa. Véase *Informe de la conferencia judicial sobre el privilegio del periodista*, 42 (Núm. 2) Rev. Col. Abog. PR 51, 51-52 (1981). El primer caso reportado sobre el reclamo de un privilegio por el uso de fuentes confidenciales en Estados Unidos data de 1848, el cual dio lugar al primer estatuto que reconoció dicho privilegio en Maryland en 1896. Íd., pág. 51. Véase *Ex parte* Nugent, 18 F. Cas. 471 (C.C.D.D.C. 1848).

Un tiempo después, el caso de Branzburg v. Hayes, 408 US 665 (1972) (en adelante, *Branzburg*) marcó un hito histórico en la discusión sobre la posible confidencialidad de la información obtenida por la prensa. En *Branzburg*, el Máximo Foro federal consolidó los casos de tres (3) periodistas que fueron llamados a testificar ante un Gran Jurado sobre determinada información de actividad criminal que obtuvieron mediante fuentes confidenciales. La

citación se diligenció con el propósito de que éstos identificaran a las personas aludidas en sus respectivos reportajes por presuntamente tratarse de fabricantes de drogas y miembros del grupo conocido como los "Black Panthers" que incurrieron en conducta criminal. Branzburg v. Hayes, *supra*, págs. 667–677.    Sin embargo, los periodistas se negaron a testificar ante el Gran Jurado al amparo de la Primera Enmienda de la Constitución federal. Íd. De esta forma, el Tribunal Supremo de Estados Unidos examinó si, en el contexto de una citación de un Gran Jurado relacionada con una investigación criminal, los periodistas estaban exentos de comparecer y divulgar la fuente de información confidencial al amparo de la citada disposición constitucional.

El Tribunal Supremo federal, mediante una Opinión del Juez Asociado Señor White, resolvió en una decisión cinco a cuatro (5-4) que los periodistas no tenían un privilegio bajo la Primera Enmienda que les permitiera rehusarse a comparecer y testificar ante un Gran Jurado sobre preguntas relacionadas con la posible conducta criminal presenciada por el periodista en cuanto a sus fuentes. Íd., pág. 692. Asimismo, rechazó el argumento de que el interés de los periodistas en publicar noticias sobre los crímenes cometidos por sus fuentes confidenciales superaba el interés público de que un Gran Jurado investigara -de buena fe- la alegada conducta delictiva denunciada por la prensa. No obstante, **el Tribunal Supremo federal reconoció que la**

**recolección de información periodística no está desprovista de protección bajo la Primera Enmienda, pues de lo contrario la libertad de prensa se vería seriamente afectada** ("[w]e do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated"). Íd., pág. 681.

**Con dicha aseveración, *Branzburg* dejó espacio para el reconocimiento de un privilegio del periodista (absoluto o cualificado) por parte del Congreso de los Estados Unidos en la esfera federal, las legislaturas estatales o <u>los tribunales de cada estado en el ejercicio de interpretar sus propias constituciones</u>.** En lo pertinente, el Máximo Foro federal manifestó lo siguiente:

> At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate. There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute. Íd., pág. 706.

Por otro lado, el voto decisivo del dictamen fue emitido por el Juez Asociado Señor Powell, quien concurrió

con la mayoría y enfatizó el alcance limitado de la Opinión por razón del interés sustancial que posee el Estado en el contexto de una investigación criminal ante un Gran Jurado. Aun así, **manifestó que los tribunales estarían disponibles para los periodistas en circunstancias en las que los intereses legítimos de la Primera Enmienda requirieran protección** ("the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection").  Íd., pág. 710 (Opinión concurrente del Juez Asociado Señor Powell).  En ese sentido, **razonó que el grado de protección que se le debía conferir a las fuentes de información dependería de un análisis caso a caso de los intereses en competencia y el balance adecuado entre el derecho a la libertad de prensa y el interés público envuelto.**[4]  En específico, el Juez Asociado Señor Powell expuso lo siguiente:

> [N]o harassment of newsmen will be tolerated. If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy.  Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered.  The asserted claim to

---

[4]   Sobre la interpretación que se le ha dado a la Opinión concurrente del Juez Asociado Señor Powell, el tratadista Rodney A. Smolla comenta lo siguiente: "Justice Powell's opinion thus did not appear to endorse an outright rejection of the reporter's privilege. Rather, it appeared to endorse a qualified privilege, in which a balancing test would be employed case-by-case.  Branzburg may thus have not been a five-to-four decision at all, but rather a decision 'by a vote of four and a half to four and a half.'" (Citas omitidas).  3 *Smolla & Nimmer on Freedom of Speech* Sec. 25:22 (octubre 2023).

> privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions. Íd., págs. 709-710 (Opinión concurrente del Juez Asociado Señor Powell).

Finalmente, el Juez Asociado Señor Stewart emitió una Opinión disidente, la cual reseñamos por su resonancia en la evolución normativa pos-*Branzburg*. En su disenso, al cual se unieron los Jueces Asociados Señores Brennan y Marshall, se arguyó a favor del reconocimiento de un **privilegio cualificado del periodista** al amparo del derecho de la prensa a recolectar información.[5] El Juez Asociado Señor Stewart planteó que la existencia de un derecho constitucional del periodista a mantener sus fuentes de información confidenciales surgía del amplio interés social en mantener el libre flujo de información a favor del público ("[t]he reporter's constitutional right to a confidential relationship with his source stems from the broad societal interest in a full and free flow of information to the public"). Íd., pág. 725 (Opinión disidente del Juez Asociado Señor Stewart). Por ende, propuso que los tribunales debían emplear un *test* de tres

---

[5] Valga señalar que el Juez Asociado Señor Douglas emitió una Opinión disidente mediante la cual estimó que el privilegio del periodista debió reconocerse como un derecho absoluto, ya que entendía que el balance requerido se había hecho por quienes redactaron la Carta de Derechos de la Constitución federal ("[m]y belief is that all of the 'balancing' was done by those who wrote the Bill of Rights"). Branzburg v. Hayes, 408 US 665, 713 (1972) (Opinión disidente del Juez Asociado Señor Douglas).

(3) factores antes de ordenar que los periodistas revelaran sus fuentes, por lo que el privilegio podría ceder si el Gobierno demostraba: (1) que existe una creencia razonable de que el periodista posee información que es claramente relevante para el fin específico de la investigación gubernamental; (2) que no existe otro mecanismo o medio menos lesivo a los derechos consagrados en la Primera Enmienda de la Constitución de Estados Unidos para recolectar la información, y (3) que existe un interés apremiante en obtener la información. Íd., pág. 743 (Opinión disidente del Juez Asociado Señor Stewart).

Luego de *Branzburg*, cuarenta y nueve (49) estados, así como el Distrito de Columbia,[6] han reconocido algún tipo de privilegio en protección del periodista que se niega a divulgar la identidad de sus fuentes confidenciales, ya sea mediante la aprobación de leyes conocidas como "shield laws" o por la vía judicial a través de una interpretación de la constitución estatal o del derecho común.[7] Hasta el momento no se ha aprobado una protección estatutaria a nivel federal; sin embargo, **casi todos los tribunales apelativos federales, con excepción del Sexto y el Séptimo Circuito, han reconocido en contextos distintos <u>el privilegio cualificado del periodista</u> -sujeto a un análisis**

---

[6] Cathy Packer, *The Politics of Power: A Social Architecture Analysis of the 2005-2008 Federal Shield Law Debate in Congress*, 31 Hastings Comm. & Ent L.J. 395, 431-432 esc. 263 (2009).

[7] J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. TEMIS, 2009, pág. 1183.

**de buena fe y balance de intereses, así como una variación de un *test* de tres (3) factores- bajo la Primera Enmienda de la Constitución federal o fundamentándose en el derecho común.[8]** Este privilegio conlleva una determinación caso a caso sobre en cuáles circunstancias debe ceder el interés de la prensa.[9] Cabe destacar que la protección de la

---

[8]   Véanse: United States v. Capers, 708 F.3d 1286, 1303 (11mo Cir. 2013) (reconociendo la existencia del privilegio cualificado del periodista en casos civiles y criminales); Price v. Time, Inc., 416 F. 3d 1327, 1343 (11mo Cir. 2005) (aplicando el *test* de tres (3) factores establecido en Miller v. Transamerican Press, Inc., *infra*); Shoen v. Shoen, 48 F.3d 412, 415 (9no Cir. 1995) (reafirmando el privilegio cualificado del periodista, sujeto a un *test* de tres (3) factores, a saber, que el material solicitado: (1) no está disponible a pesar de haber agotado otras fuentes razonables;  (2) no es acumulativo; y (3) resulta claramente relevante a un asunto importante del caso); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4to Cir. 1986) (resolviendo que el tribunal de distrito tiene discreción  para determinar si se debe compeler el testimonio de un periodista tras un análisis de balance de intereses); Zerilli v. Smith, 656 F.2d 705, 714 (D.C. Cir. 1981) (requiriéndole al demandante por difamación que agotara otras posibles fuentes de información antes de obligar al periodista a revelar la identidad de las fuentes); Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 595-96 (1er Cir. 1980) (determinando que los tribunales deben hacer un balance entre la necesidad invocada para obtener la información solicitada y el daño potencial al libre flujo de información); United States v. Cuthbertson, 630 F.2d 139, 147 (3er Cir. 1980) (reconociendo el privilegio cualificado del periodista a no divulgar sus fuentes confidenciales e información no publicada en casos criminales); Miller v. Transamerican Press, Inc., 621 F.2d 721, 725-726 (5to Cir. 1980) (reconociendo el privilegio cualificado del periodista en protección de sus fuentes confidenciales en un caso por difamación, excepto cuando la información: (1) es relevante; (2) no se puede conseguir mediante otras alternativas, y (3) existe un interés apremiante en obtener la información); Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 437-438 (10mo Cir. 1977) (revocando y devolviendo el caso al foro primario, ya que del expediente no surgía información sobre la naturaleza de la prueba solicitada, los esfuerzos para obtener la información de otras fuentes, la necesidad de descubrir la información y su relevancia); Baker v. F & F Inv., 470 F.2d 778, 783-785 (2do Cir. 1972) (determinando que el testimonio del periodista podía ser compelido si la parte peticionaria demostraba que la información: (1) es relevante; (2) no puede obtenerse de otras fuentes, y (3) resulta necesaria o crítica para la reclamación); Cervantes v. Time, Inc., 464 F.2d 986, 993-994 (8vo Cir. 1972) (resolviendo que la divulgación de las fuentes en una acción de libelo era innecesaria, ya que el demandante no había presentado prueba conducente a prevalecer en los méritos de la reclamación).

[9]   Álvarez González, *op. cit.*, pág. 1183.

Primera Enmienda ha sido más contundente en el contexto de los casos civiles.[10]

En lo concerniente a los casos por difamación presentados por figuras o funcionarios públicos, el Tribunal Supremo federal ha manifestado que **no existe un privilegio absoluto** a favor del periodista demandado **con relación al aspecto subjetivo de sus pensamientos, opiniones y conclusiones en el proceso editorial** bajo la Primera Enmienda de la Constitución federal. Herbert v. Lando, 441 US 153, 169 (1979). Allí el Máximo Foro federal reiteró su intención de preservar el equilibrio alcanzado en New York Times Co. v. Sullivan, 376 US 254 (1964),[11] entre el interés que poseen los demandantes sobre su reputación y el interés de la prensa al amparo de la Primera Enmienda. Herbert v. Lando, *supra*, págs. 169-170. Por su parte, el tratadista Rodney A. Smolla comenta que **lo resuelto en el citado caso no socava el reconocimiento de un privilegio cualificado en protección de las fuentes confidenciales**. 3 Smolla & Nimmer on Freedom of Speech Sec. 25:24 (octubre 2023). Tanto en los foros judiciales federales como en los estatales existe consenso en que las órdenes para compeler la divulgación de las fuentes

---

[10] R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. PR, 1988, Vol. II, pág. 1588.

[11] En lo pertinente, en New York Times Co. v. Sullivan, 376 US 254 (1964) el Tribunal Supremo de Estados Unidos determinó que el estándar para prevalecer en una causa de acción por difamación presentada por un oficial público requería la demostración de malicia real. Este precedente fue incorporado a nuestra doctrina de difamación en García Cruz v. El Mundo, Inc., 108 DPR 174 (1978).

confidenciales no deben ser automáticas, por lo que los tribunales han denegado este tipo de descubrimiento cuando no se logra demostrar la relevancia, la necesidad, el agotamiento de fuentes alternativas o que el caso contra el periodista sea potencialmente meritorio.[12]

Expuesto el marco jurídico aplicable, procedemos a analizar la presente controversia.

### III

El señor Cruz plantea la existencia del privilegio cualificado del periodista en Puerto Rico y sostiene que erró el Tribunal de Apelaciones al compeler la contestación de ciertos interrogatorios que pretenden descubrir sus fuentes periodísticas confidenciales, así como la identidad de las personas mencionadas en la publicación. Por su parte, el señor Izquierdo II niega la existencia de tal privilegio y aduce que sólo bastaba con establecer el elemento de pertinencia para ordenar la divulgación de dicha información. En consecuencia, debemos determinar si en nuestro ordenamiento constitucional existe el privilegio del periodista cualificado en protección de sus fuentes e informaciones confidenciales. Debido a que los

---

[12] Algunos comentaristas sobre el tema señalan lo siguiente: "disclosure orders are far from automatic in libel cases and other litigation in which the journalist is a party. Most courts have held that compelled disclosure of sources and work product raises significant First Amendment concerns even when the journalist is directly involved in the action, and many attempts to force disclosure by party journalists have been denied for failure to make an adequate showing of relevance, need, or exhaustion of alternative sources, or to demonstrate that the case against the journalist has potential merit." 2 Testimonial Privileges Sec. 8:19 (febrero 2023).

errores giran en torno a un mismo asunto, los discutiremos en conjunto.

De acuerdo con el desenvolvimiento histórico de la normativa reseñada, resulta evidente que el desarrollo de la protección a la libertad de prensa en Puerto Rico no se ha logrado atemperar a la clara tendencia que predomina en la inmensa mayoría de las jurisdicciones estatales, así como en los circuitos apelativos a nivel federal. En Puerto Rico no existen leyes ni parámetros específicos que reconozcan la existencia de un derecho en protección de los periodistas frente a las solicitudes para que divulguen sus fuentes periodísticas e informaciones confidenciales. No obstante, debemos recordar que la Constitución de Puerto Rico es una fuente independiente de la cual se derivan protecciones y privilegios cuyos contornos pueden ser delimitados "cuando su aplicación está reñida con un derecho fundamental". Pueblo v. Fernández Rodríguez, 183 DPR 770, 783 (2011) (citando a E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, San Juan, Pubs. JTS, 2005, T. I, págs. 169-170).

En nuestra Asamblea Legislativa se han presentado varios proyectos de ley para reconocer una protección de los periodistas y sus fuentes, pero los resultados hasta el momento han sido infructuosos.[13]  No obstante, la

---

[13]  Véanse, por ejemplo: el P. de C. 859 de 21 de septiembre de 1978; el P. de la C. 662 de 27 de enero de 1986; el P. del S. 1019 de 11 de octubre de 2005, 2da Sesión Ordinaria, 15ta Asamblea Legislativa; el P. del S. 1611 de 29 de agosto de 2005, 4ta Sesión Ordinaria, 15ta Asamblea Legislativa; el P. del S. 734 de 24 de enero de 2022, 3ra

aprobación de un proyecto de ley no es indispensable para reconocer que nuestro ordenamiento provee una protección del quehacer periodístico y sus fuentes confidenciales al amparo del derecho a la libertad de expresión y de prensa garantizado en la Constitución de Puerto Rico. A fin de cuentas, la función de interpretar nuestra Ley Suprema es tarea indelegable del Poder Judicial. <u>Figueroa Ferrer v. E.L.A.</u>, 107 DPR 250, 277 (1978). Y es que no podría ser de otra forma, pues el desarrollo pleno del derecho a la libertad de expresión y de prensa, naturalmente, implica la protección de los medios necesarios para hacer valer este derecho.[14] En esa línea, el reconocimiento de este privilegio es de vital importancia para el trabajo investigativo de los periodistas, ya que fortalece la confianza entre éstos y sus fuentes para diseminar información valiosa sin temor a sufrir represalias y promueve el derecho de la población a mantenerse bien informada.[15]

Como hemos podido ver, en respuesta al vacío jurídico existente en algunas jurisdicciones con relación a la

---

Sesión Ordinaria, 19na Asamblea Legislativa; el P. del S. 743 de 2 de febrero de 2022, 3ra Sesión Ordinaria, 19na Asamblea Legislativa, y el P. de la C. 1193 de 3 de febrero de 2022, 3ra Sesión Ordinaria, 19na Asamblea Legislativa.

[14] E. Pérez Jiménez, *El derecho constitucional del periodista a no divulgar sus fuentes de noticias y el contenido de la información recopilada*, 9 Rev. Jur. UIPR 101, 114 (1974).

[15] Como es conocido, este Tribunal ha reconocido el derecho de acceso a la información pública en beneficio de los ciudadanos como un derecho constitucional implícito de la libertad de expresión. Véase <u>Soto v. Srio. de Justicia</u>, 112 DPR 477 (1982). Posteriormente, se aprobó la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública, Ley Núm. 141-2019, según enmendada, 3 LPRA secs. 9911-9923.

protección de los periodistas y sus fuentes, los tribunales "han desarrollado varias doctrinas para justificar la indebida interferencia judicial en el libre ejercicio de la libertad de prensa".[16] Recientemente, en <u>Torres, Santana v. Noticentro PR</u> *et al.*, 210 DPR 783 (2022) (Sentencia), este Tribunal atendió una controversia que versaba sobre una solicitud para que se divulgara la identidad de una fuente periodística confidencial en el contexto de una acción por difamación.[17] En síntesis, este Foro emitió una Sentencia en la que resolvió que le correspondía al tribunal de instancia determinar si, en efecto, la identidad de la fuente periodística era pertinente para evaluar si la información divulgada era de naturaleza difamatoria. <u>Íd.</u>, pág. 784. Además, se determinó que, de entender que la información fuese pertinente a la causa de acción, el tribunal de instancia debía establecer si se configuraban los requisitos de algún privilegio. <u>Íd.</u>

En particular, mediante una Opinión de conformidad emitida por el Juez Asociado Señor Rivera García, a la cual se unieron el Juez Asociado Señor Martínez Torres y la Jueza Asociada Señora Pabón Charneco, se destacó que **se debía auscultar la pertinencia de la identidad de la fuente periodística para la adjudicación de la acción.** <u>Íd.</u>,

---

[16]    Pérez Jiménez, *supra*, pág. 107.

[17]    Aunque las sentencias emitidas por este Tribunal no constituyen precedentes vinculantes para la comunidad legal y el público en general, las expresiones judiciales vertidas en éstas pueden tener un valor persuasivo e ilustrativo en cuanto a la interpretación jurídica de los miembros de este Foro sobre una controversia.

pág. 796 (Opinión de conformidad del Juez Asociado Señor Rivera García). Por otro lado, mediante una Opinión de conformidad emitida por el Juez Asociado Señor Colón Pérez, a la cual se unió el Juez Asociado Señor Estrella Martínez, se planteó que, **de determinar que la identidad de la fuente periodística fuese pertinente, el foro primario debía hacer un balance de intereses, a la luz del reconocimiento del <u>privilegio cualificado del periodista</u> en nuestra jurisdicción, para disponer correctamente de la controversia.** Íd., pág. 830 (Opinión de conformidad del Juez Asociado Señor Colón Pérez). Una lectura armonizada de las referidas Opiniones de conformidad nos parece adecuada y necesaria para establecer un balance razonable entre la libertad de expresión y de prensa que cobija a los periodistas, y el estándar de prueba requerido para todo individuo que busca proteger su reputación en una acción por difamación. Como ya indicamos, la libertad de expresión y de prensa no es absoluta.

Cónsono con la normativa reseñada, **una vez establecida la pertinencia de la identidad de la fuente periodística o de la información confidencial para la adjudicación de la acción, los tribunales deben evaluar si la parte interesada en descubrir la información solicitada ha presentado prueba alguna a los fines de establecer: (1) que lo publicado es falso y difamatorio; (2) que empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y (3) que es necesario conocer la identidad**

**de la fuente o la información confidencial para establecer su causa de acción.** Véase Íd., págs. 830-831 (Opinión de conformidad del Juez Asociado Señor Colón Pérez). **Si se satisfacen estos requisitos, el privilegio del periodista a no divulgar sus fuentes o informaciones confidenciales quedaría superado por el interés de la parte que demuestra la necesidad de la divulgación, por lo que el periodista podrá ser compelido a producir la información solicitada.** Ciertamente, el Poder Legislativo tendría la facultad de aprobar legislación para complementar el privilegio en discusión y atender de manera específica los asuntos que afecten el interés público. Ello sería, claro está, dentro de los parámetros constitucionales que aseguran el derecho a la libertad de expresión y de prensa.

Habiendo contestado la interrogante de la existencia del privilegio cualificado del periodista en Puerto Rico, modificamos el dictamen del Tribunal de Apelaciones que determinó en estos momentos que el señor Cruz estaba obligado a contestar los interrogatorios dirigidos a conocer la identidad de las personas mencionadas en la publicación y divulgar sus fuentes periodísticas. A esos fines, en este caso le corresponde al Tribunal de Primera Instancia determinar si la información solicitada es pertinente para la adjudicación de la acción de difamación y, de contestarse en la afirmativa, evaluar si se satisfacen los criterios que hemos establecido para compeler el descubrimiento a la luz del privilegio

cualificado del periodista. Sólo de esta forma, los tribunales estarían en posición de realizar un análisis efectivo y completo de la controversia.

Por las razones expuestas, **concluimos que <u>el privilegio cualificado del periodista</u> es el mecanismo adecuado en nuestro ordenamiento para vedar aquellas solicitudes caprichosas y arbitrarias que busquen descubrir injustificadamente las fuentes e informaciones confidenciales en un caso civil sobre libelo.** De esta manera, propiciamos el libre intercambio de ideas y un mayor acceso a la información en beneficio de la ciudadanía, lo cual sin duda redunda en el fortalecimiento de una sociedad democrática.

## IV

Por los fundamentos que anteceden, se modifica la *Sentencia* emitida por el Tribunal de Apelaciones el 27 de octubre de 2022 y se devuelve el caso al Tribunal de Primera Instancia para que evalúe la pertinencia de la información solicitada (a saber, las fuentes periodísticas confidenciales y la identidad de las personas mencionadas en la publicación) y, de entenderla pertinente a la causa de acción, adjudique si el privilegio cualificado del periodista queda superado a la luz de los criterios establecidos en esta Opinión.

Se dictará Sentencia en conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José R. Izquierdo II

    Recurrido

        v.

Enrique (Kike) Cruz y otros

    Peticionarios

|  |  |  |
|---|---|---|
| CC-2022-847 | | |
| cons. con | *Certiorari* | |
| CC-2023-5 | | |

SENTENCIA

En San Juan, Puerto Rico, a 6 de marzo de 2024.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se modifica la Sentencia emitida por el Tribunal de Apelaciones el 27 de octubre de 2022 y se devuelve el caso al Tribunal de Primera Instancia para que evalúe la pertinencia de la información solicitada (a saber, las fuentes periodísticas confidenciales y la identidad de las personas mencionadas en la publicación) y, de entenderla pertinente a la causa de acción, adjudique si el privilegio cualificado del periodista queda superado a la luz de los criterios establecidos en la Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión de Conformidad, a la cual se unió el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Kolthoff Caraballo no interviene.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José R. Izquierdo II<br><br>    Recurrido<br><br>        v.<br><br>Enrique (Kike) Cruz y otros<br><br>    Peticionarios | CC-2022-0847<br>Cons. con<br>CC-2023-0005 |

Opinión de Conformidad emitida por el Juez Asociado señor COLÓN PÉREZ, a la que se une el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 6 de marzo de 2024.

Hace aproximadamente un año y medio atrás, en *Torres, Santana v. Noticentro PR et al.*, 210 DPR 783 (2022) (Opinión de Conformidad del Juez Asociado señor Colón Pérez, a la cual se unió el Juez Asociado señor Estrella Martínez), elaborábamos sobre la importancia de reconocer en nuestra jurisdicción, --bajo la factura más ancha que brinda la Constitución del Estado Libre Asociado de Puerto Rico--, el privilegio cualificado del periodista. Señalábamos en aquella ocasión que la necesidad de incorporar aquí la precitada figura jurídica, de arraigo constitucional, estaba basada en la importancia de la misma para proteger, en determinados casos, la identidad de las fuentes confidenciales que utilizan los periodistas en nuestro País.

La razón de ello, tal y como mencionamos en aquel momento, radica en la trascendencia que ocupa el derecho a las libertades de expresión y prensa en nuestro sistema democrático de gobierno. Así pues, entendimos entonces y nos reafirmamos hoy, que, con el reconocimiento en nuestro ordenamiento jurídico del privilegio cualificado del periodista, abonamos, no solo al ejercicio más eficaz de la profesión periodística, sino también, y como consecuencia de lo primero, a una sociedad más informada, más democrática y, por tanto, más libre.

Conscientes de ello, y en un paso a nuestro juicio en la dirección correcta, una mayoría de este Tribunal, en el presente caso, finalmente, reconoce la existencia, en nuestra jurisdicción, del mencionado privilegio en protección de las fuentes confidenciales de los periodistas. De esta forma, esta Curia resuelve que antes de que un periodista demandado en una acción de libelo instada por una figura pública, -- y, por tanto, en donde aplique el requisito de "malicia real" que impera en nuestro ordenamiento, véase *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) y *Torres Silva v. El Mundo, Inc.*, 106 DPR 415 (1977) --, tenga que descubrir las fuentes periodísticas confidenciales de donde obtuvo la información publicada, la parte demandante tendrá que satisfacer un examen de tres partes.

A saber, y cónsono con lo que habíamos propuesto en nuestra Opinión de Conformidad en *Torres, Santana v. Noticentro PR et al.*, *supra*, pág. 831, el demandante deberá demostrar: (1) que lo publicado es falso y difamatorio; (2) que empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y (3) que resulta necesario conocer la identidad de la fuente confidencial para establecer su causa de acción. En otras palabras, para que ceda el privilegio del periodista el demandante deberá demostrar, luego de satisfacer el examen ya citado, que la identidad de la fuente del periodista demandado es necesaria para probar la "malicia real" requerida. Véase, a modo persuasivo, *Price v. Time, Inc.*, 416 F. 3d 1327, 1343-1345 (11mo. Circuito, 2005).

Ahora bien, -- y elaborando en nuestras pasadas expresiones sobre este tema --, es ineludible que la decisión a la hoy llegamos presenta una problemática de umbral que ha perseguido a los tribunales que han considerado el privilegio que hoy reconocemos. Se trata, en esencia, de la necesidad de determinar **¿qué es prensa? y ¿quién será considerado como periodista para fines del privilegio?** Véase, *Branzburg v. Hayes*, 408 US 665, 703-704 (1972)*;* y *Lee v. Department of Justice*, 401 F. Supp. 2d 123, 139-140 (D.D.C. 2005). Véase, además, M. Papandrea, *Citizen Journalism and the Reporter's Privilege*, 91 Minn. L. Rev. 515 (2007).

Al considerar este asunto, no podemos perder de vista que, conforme lo ha expresado el Tribunal Supremo de los Estados Unidos, el derecho a la libertad de prensa es el derecho que cobija tanto al panfletista solitario, como a la más avanzada empresa de comunicaciones. ("*Liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods*"). *Branzburg v. Hayes*, *supra*, pág. 704. Véase, además, *Lovell v. City of Griffin, Ga.*, 303 US 444, 452 (1938). De igual forma, al momento de precisar quién es un periodista, tampoco podemos obviar la intención histórica de donde emanó el derecho a la libertad de prensa federal. A saber, el deseo de liberar el ejercicio del periodismo de las medidas de censura y licenciamiento que imponía el imperio británico. *First National Bank of Boston v. Bellotti*, 435 US 765, 801 (1978) (Opinión concurrente del Juez Burger); *Lovell v. City of Griffin, Ga.*, *supra*, pág. 451.

No obstante, y aun considerando todo lo anterior, entendemos que el privilegio cualificado del periodista que hoy adoptamos, además de no ser absoluto, tampoco debe cobijar a toda persona que alegue, sin más, ser un periodista. Somos del criterio que, cónsono con lo que han aprobado algunos de los estados que contienen leyes escudos reconociendo el privilegio del periodista y similar a lo que

más recientemente ha sido propuesto para igual fin en el Congreso federal de los Estados Unidos (véase, *Protect Reporters from Exploitative State Spying Act*, H.R. 4330, 117mo Congreso, 20 de septiembre de 2022), un periodista, -- para fines de este privilegio --, debe ser aquella persona que regularmente recopile, prepare, recoja, fotografíe, grabe, escriba, edite, reporte, investigue o publique noticias o información que conciernan eventos locales, nacionales o internacionales, u otras materias de interés público y para la diseminación al público.

De esta forma, no incurrimos en la discutible práctica de dejar que sea el Estado quien determine, mediante la concesión de credenciales, quien será o no prensa para efectos del privilegio.[1] Ello, iría en contra de los postulados esenciales e históricos del derecho constitucional a la libertad de prensa que persiguen un ejercicio de la labor periodística libre de injerencia gubernamental.

Finalmente, y tal y como expresamos en nuestra Opinión de Conformidad en *Torres Rodríguez v. Noticentro PR et al.*, *supra*, pág. 820, el que no tengamos una ley escudo en protección de las fuentes confidenciales de nuestros periodistas, no nos impide reconocer el referido privilegio

---

[1] A esos fines, y a modo ilustrativo, véase, *Disidente Universal de Puerto Rico v. Departamento de Estado*, 145 DPR 689 (1998) (Opinión disidente del entonces Juez Asociado señor Hernández Denton), en donde se cuestionó la constitucionalidad de la expedición de credenciales de prensa por parte del Departamento de Estado.

bajo el texto e interpretación de nuestra Constitución. Después de todo, nuestra Carta Magna es, en sí misma, una fuente de garantías. Además, la libertad de prensa es un derecho fundamental de todos los puertorriqueños y puertorriqueñas y proteger dicho derecho goza del más alto interés público. Es por todo lo anterior que, si bien estamos conformes con el resultado al que hoy arribamos, emitimos la presente expresión.


                                            Ángel Colón Pérez
                                              Juez Asociado